UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STATE OF CALIFORNIA, et al.,

         Plaintiffs,

      v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

         Defendants.

Case No.  19-cv-04975-PJH
Case No.  19-cv-04980-PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO COMPLETE THE RECORD AND GRANTING MOTIONS TO COMPEL DISCOVERY**

Re: Dkt. Nos. 149 (No. 19-cv-04975-PJH), 150 (No. 19-cv-04980-PJH)

LA CLINICA DE LA RAZA, et al.,

         Plaintiffs,

      v.

DONALD J. TRUMP, et al.,

         Defendants.

Plaintiffs the State of California, State of Oregon, Commonwealth of Pennsylvania, and District of Columbia's (the "State plaintiffs") and La Clínica de La Raza, African Communities Together, California Primary Care Association, Central American Resource Center, Farmworker Justice, Council on American-Islamic Relations-California, Korean Resource Center, Maternal and Child Health Access, and Legal Aid Society of San Mateo County's (the "organization plaintiffs" and together with the State plaintiffs, the

"plaintiffs")[1] motions to complete the administrative record and compel discovery came on for hearing before this court on March 4, 2020.  State plaintiffs appeared through their counsel, Julia Mass and Anna Rich, and organization plaintiffs appears through their counsel, Mayra Joachin, Nicholas Espiritu, Tanya Broder, and Alvaro Harris.  Defendants U.S. Citizenship and Immigration Services ("USCIS"), Department of Homeland Security ("DHS" or the "Agency"), President Donald J. Trump, Chad Wolf,[2] as Acting Secretary of DHS, and Kenneth T. Cuccinelli as Acting Director of USCIS appeared through their counsel, Joshua Kolsky.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

On August 16, 2019, the State plaintiffs filed a complaint ("Compl.") to enjoin enactment of regulations promulgated by DHS entitled Inadmissibility on Public Charge Grounds (the "Public Charge Rule" or "Rule"), 84 Fed. Reg. 41,292 (Aug. 14, 2019).  The Agency published the final rule in the Federal Register on August 14, 2019 with an effective date of October 15, 2019.  Id. at 41,292.  State plaintiffs' complaint asserts six causes of action:  (1) Violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706—Contrary to Law, the Immigration and Nationality Act ("INA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"); (2) Violation of APA, 5 U.S.C. § 706—Contrary to Law, Section 504 of the Rehabilitation Act; (3) Violation of APA, 5 U.S.C. § 706—Contrary to Law, State Healthcare Discretion; (4) Violation of APA, 5 U.S.C. § 706—Arbitrary and Capricious; (5) Violation of the Fifth Amendment's Due

---

[1] Plaintiffs the City and County of San Francisco and County of Santa Clara (the "County plaintiffs") in the related case City and County of San Francisco v. U.S. Citizenship and Immigration Services, No. 19-cv-04717-PJH, have not filed a motion to compel and have not joined in either the State plaintiffs or organization plaintiffs' motions.

[2] This action was originally brought against Kevin McAleenan in his official capacity as Acting Secretary of Homeland Security.  Compl. ¶ 27.  As of November 13, 2019, Chad Wolf is the acting secretary of DHS (see https://www.dhs.gov/person/chad-f-wolf) and, pursuant to Federal Rule of Civil Procedure 25(d), an officer's successor is automatically substituted as a party.

United States District Court
Northern District of California

Process clause requiring Equal Protection based on race; (6) Violation of the Fifth Amendment's Due Process clause, based on a violation of Equal Protection principles based on unconstitutional animus.  Dkt. 1.[3]  The organization plaintiffs' complaint, also filed August 16, 2019, asserts four causes of action:  (1) Violation of APA, 5 U.S.C. § 706—Contrary to the Statutory Scheme; (2) Violation of APA, 5 U.S.C. § 706—Arbitrary, Capricious, or otherwise not in accordance with law; (3) Violation of the Fifth Amendment based on Equal Protection for discriminating against non-white immigrants; (4) under the Declaratory Judgment Act, seeking a determination that the Rule is invalid because it was issued by an unlawfully-appointed agency director.  No. 19-cv-04980-PJH, Dkt. 1.

On August 26, 2019, plaintiffs (including the County plaintiffs) filed motions for preliminary injunction (Dkt. 17), for which the court heard argument on October 2, 2019, (Dkt. 109).  On October 11, 2019, the court entered a preliminary injunction enjoining defendants from applying the Rule to any person residing in the City and County of San Francisco, Santa Clara County, the States of California, Oregon, or Maine, the Commonwealth of Pennsylvania, or the District of Columbia.  Dkt. 120, at 92.  The court also denied the organization plaintiffs' motion on the basis that they do not fall within the challenged statute's zone of interest such that they do not have prudential standing to bring an APA claim.  Id. at 72, 92.  The court did not rule on plaintiffs' constitutional claims as it was not within the scope of plaintiffs' motion.  Id. at 12 n.5.

Defendants appealed the preliminary injunction on October 30, 2019.  Dkt. 129.  A three-judge panel of the Ninth Circuit stayed the preliminary injunctions issued within this circuit on December 5, 2019.[4]  Dkt. 141; see City & Cty. of San Francisco v. USCIS, 944

---

[3] Unless otherwise specified, references to the docket are to State of California v. U.S. Department of Homeland Security, Case No. 19-cv-04975-PJH.

[4] The panel consolidated the three related cases before this court with a similar case from the Eastern District of Washington.  That court issued a nationwide injunction of the Rule on the same day as this court's geographically limited preliminary injunction order.  Washington v. U.S. Dep't of Homeland Security, 408 F. Supp. 3d 1191, 1224 (E.D. Wash. 2019).

F.3d 773 (9th Cir. 2019).  Two district courts outside the Ninth Circuit also enjoined implementation of the Rule—a nationwide injunction and an injunction limited to the State of Illinois.  New York v. U.S. Dep't of Homeland Security, 408 F. Supp. 3d 334 (S.D.N.Y. 2019); Cook Cty., Illinois v. McAleenan, 417 F. Supp. 3d 1008 (N.D. Ill. 2019).  On January 27, 2020, the Supreme Court granted the federal government's application for a stay pending appeal of the nationwide injunction of the Public Charge Rule issued by the District Court for the Southern District of New York.  Dep't of Homeland Security v. New York, 140 S. Ct. 599 (2020).  On February 18, 2020, the Ninth Circuit panel voted to deny plaintiffs-appellees' motions for reconsideration and motions for rehearing en banc.  Dkt. 153.  Finally, on February 21, 2020, the Supreme Court granted an application from the federal government for a stay of the injunction issued by the District Court for the Northern District of Illinois.  Wolf v. Cook Cty., Illinois, 140 S. Ct. 681 (2020).

As relevant to the current motions, on November 25, 2019, defendants served the administrative record on plaintiffs via an online portal.  After several attempts to meet and confer to resolve their differences concerning the administrative record, plaintiffs contend the record remains incomplete, resulting in the current motions.  They also seek discovery on their constitutional claims.

## DISCUSSION

### A.    Legal Standard

The APA provides that a court's arbitrary and capricious review shall be based on "the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  The whole administrative record "includes everything that was before the agency pertaining to the merits of its decision."  Portland Audubon Soc'y v. Endangered Species Comm., 984 F.2d 1534, 1548 (9th Cir. 1993).  Further, the whole record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position."  Thompson v. U.S. Dep't of Labor, 885 F.2d 551, 555 (9th Cir. 1989) (citing Exxon Corp. v. U.S. Dep't of Energy, 91 F.R.D. 26, 33 (N.D. Tex. 1981)).

United States District Court
Northern District of California

The administrative record submitted by the federal government is entitled to a presumption of completeness, which is rebutted by clear evidence.  Id.  A court may only consider extra-record materials in the following circumstances:  "(1) if necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) 'when the agency has relied on documents not in the record,' or (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter.'"  Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1450 (9th Cir. 1996) (quoting Inland Empire Public Lands Council v. Glickman, 88 F.3d 697, 703–04 (9th Cir. 1996)).  The Ninth Circuit also permits extra-record documents when a plaintiff demonstrates bad faith by the agency.  Id. (citing Nat'l Audubon Soc. v. U.S. Forest Serv., 46 F.3d 1437, 1447 n.9 (9th Cir. 1993)).  These exceptions are narrowly construed and applied.  Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005) (citations omitted).

**B.     Analysis**

**1.     Motions to Complete the Administrative Record**

Generally, plaintiffs identify the following categories of missing documents for which they seek the court to order defendants to produce as part of the administrative record:  (a) complete, unredacted copies of all policies, procedures, forms and guidance related to the application of the public charge ground of inadmissibility or any other aspect of the Rule or previous drafts of the Rule; (b) the USCIS article, "Public Charge Provisions of Immigration Law: A Brief Historical Background," dated August 14, 2019, and all data the article references, including Immigration and Naturalization Service, DHS, and Department of State consular processing statistics related to public charge determinations; (c) inter- and intra-agency communications and Agency communications with outside organizations related to the Rule, including records related to the Agency's development of forms related to public charge determinations and estimates regarding the burdensomeness of forms; (d) White House communications to the Agency related to

the Rule; and (e) missing comments from the public.[5]  The court addresses each category in turn.

### a.   Policy and Guidance Documents

Plaintiffs argue that defendants did not provide policies, procedures, forms and guidance that were considered either directly or indirectly by the Agency during the rulemaking process, but not included in the record.  Mtn. at 5.  Alternatively, plaintiffs contend that these policies are relevant background information.  Defendants respond that plaintiffs have not demonstrated that the policies in question were considered by the relevant decision-maker.  Opp. at 5–6.  Defendants also contend that adding document as background material is only appropriate for explanation or clarification of technical terms or subject matter.  Id. at 7.

As an initial matter, defendants have agreed to produce a few policy documents as part of the record and some of plaintiffs' requests are now moot.  In their motion, plaintiffs seek inclusion of portions of the USCIS's Adjudicator's Field Manual ("AFM") and Volumes 7 and 8 of the USCIS Policy Manual (the "Policy Manual").  Mtn. at 5–6.  In their opposition, defendants agree to add the full version of the following portions of the Policy Manual: Volume 7, Part B and Volume 8, Part B, Chapter 3.  Opp. at 7.  Defendants also agree to add Chapter 10.8 of the AFM.  Finally, defendants agree to add internal versions of those sections of the USCIS Policy Manual and the AFM that they have already provided for the record, with the exception of Volume 8, Part B, Chapter 3 of the Policy Manual because the Rule cited the public version of the document.  Id.

---

[5] Plaintiffs also identified two additional categories of missing materials:  (i) information and data related to legal permanent residents who may undergo a public charge inadmissibility determination upon return from trips abroad and (ii) correct, contemporaneous copies of websites included in the record.  Mtn. at 3.  In a footnote, plaintiffs explain that, with respect to data on legal permanent residents, defendants informed them that such data was not before the Agency during the decision-making process.  Id. at 4 n.1.  Plaintiffs also state that they are not moving for corrected copies of webpages referenced in the Rule but reserve the right to do so.  Id. at 4 n.2.  Because plaintiffs do not specify these categories in any further detail and do not advance an argument as to why these categories should be included in the administrative record, the court does not address these issues.

Despite these concessions, plaintiffs respond that there are other portions of the policy manual to which they still require access.  Specifically, they seek:  USCIS Policy Manual Vol. 2, Part A, chapter 42; USCIS Policy Manual Vol. 7, Part A, chapters 1, 4, 5, 6, and 10; USCIS Policy Manual Vol. 7, Part R; USCIS Policy Manual Vol. 8, Parts A, G, and L; the remainder of USCIS Policy Manual Vol. 8, Part B; USCIS Policy Manual Vol. 12, Part D, chapter 2; AFM, chapter 61.2; Chapter 12 of the Deportation Officer's Field Manual; Chapter 45 of the Inspector's Field Manual; and Standard Operating Procedures, Adjudicative Templates, and Appendices referenced in the above-listed policy documents and in the policy documents Defendants disclosed on February 12, 2020.  Reply at 5–6.

Plaintiffs contend that the policy manuals should be considered under either the second or third Inland Empire exceptions, i.e., whether the agency considered documents not in the record or whether the policy manuals constitute relevant background information.

### i.      Whether the Agency Considered Documents Not in the Record

The second Inland Empire exception applies when an agency relied directly or indirectly on documents not in the record.  To meet this exception, the moving party must "identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) (citation omitted).  The moving party "must do more than imply that the documents at issue were in the agency's possession." Safari Club Int'l v. Jewell, No. CV-16094-TUC-JGZ, 2016 WL 7785452, at *2 (D. Ariz. July 7, 2016) (citing Sara Lee Corp. v. Am. Bakers Ass'n, 252 F.R.D. 31, 34 (D.D.C. 2008)).  The question is whether plaintiffs have demonstrated that the document in question "'was so heavily relied on in the recommendations [of subordinates] that the decision maker constructively considered it' . . . even if there is no evidence that the decision maker read the [document]." Sharks Sports & Entm't LLC v. Fed. Transit Admin., No. 18-cv-04060-LHK, 2020 WL 511998, at *4 (N.D. Cal. Jan. 31,

1   2020 (first alteration in original) (quoting <u>Wildearth Guardians v. U.S. Forest Serv.</u>, 713 F.

2   Supp. 2d 1243, 1256 (D. Colo. 2010)).

3        Plaintiffs argue that the Agency relied on knowledge of its policies in order to draft

4   the Rule and that even materials that were indirectly considered should be included in the

5   record.  Mtn. at 6.  Defendants contend that they should not be required to produce

6   policies that are related to the general subject matter of the Rule and in the Agency's

7   possession but were not considered by the Agency's decision-makers.  Opp. at 5.

8        After reviewing the Rule and the Cisneros Declaration, the court finds that plaintiffs

9   have not carried their burden to demonstrate that the policy documents were "so heavily

10  relied on" by the agency's decision makers.  Plaintiffs attempt to draw comparisons

11  between excerpts from the Rule and a corresponding policy manual section or chapter

12  that implicates, at a high level, the same topic as the excerpt.  For example, the Rule

13  states that the Agency "reject[s] the assertion that the rule shifts emphasis away from the

14  affidavit of support."  84 Fed. Reg. at 41,439.  Plaintiffs contend that this sentence

15  implicates Volume 7, Part A, which covers adjustment of status policies and procedures,

16  including affidavits of support.  Cisneros Decl. ¶ 27.  As a second example, the Rule

17  states that it applies to legal permanent residents returning from a trip abroad that has

18  lasted for more than sixth months.  <u>See</u> 84 Fed. Reg. at 41,326.  Plaintiffs argue this

19  reference implicates Volume 7, Part R, which addresses legal permanent residents who

20  have been abroad for an extended period of time.  Cisneros Decl. ¶ 37.  As a final

21  example, the introduction to the Rule creates a new public charge bond process.  84 Fed.

22  Reg. at 41,295 ("This rule also revises DHS regulations governing the discretion . . . to

23  accept a public charge bond . . . .:).  Plaintiffs suggest that this reference to the public

24  charge bond process implicates AFM, chapter 61, as well as chapters cross-referenced

25  in chapter 61, all of which deal with public charge bonds.  Cisneros Decl. ¶ 62.

26        The inquiry here is necessarily one of degree.  On one end of the spectrum are

27  documents that were not explicitly cited in the Rule but were so heavily relied on in the

28  Rule that the underlying document was constructively considered by the decision maker.

United States District Court
Northern District of California

On the other end of the spectrum are documents that the Agency has in its possession but were not heavily relied upon or considered in the Rule. The excerpts and references cited by plaintiffs are not indicative of documents upon which a decision maker heavily relied. Rather, the topics expressed in the excerpts and references are stated at a high level of generality such that comparing those excerpts and references to equally high-level policy manuals does not demonstrate the manuals were heavily relied upon.

Plaintiffs also contend that the policies are relevant to understanding the scope and impact of the Rule's policy changes. Mtn. at 6. In the supplemental Cisneros Declaration, plaintiffs explain that on February 5, 2020, USCIS issued a "Policy Alert," which announced USCIS's changes to portions of its Policy Manual to implement the Rule. Dkt. 152-1, ¶ 31. According to plaintiffs, they evaluated the new versions of Volume 7, Part A, chapters 4 and 6 of the Policy Manual against the prior version of the policy manuals and determined that USCIS and DHS changed the policy manuals as a result of the Rule. Plaintiffs renew their request to add the prior versions of the policy manuals in order to evaluate whether defendants' stated basis for departing from these policies is sufficient as a matter of law. Reply at 3.

While it is permissible for plaintiffs to argue that defendants have departed from prior policies without reasonable explanation (see, e.g., Fed. Commc'ns Comm'n v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009)), they have not demonstrated that the policy manuals are the appropriate prior policies by which to evaluate whether the Rule departed from those prior policies. Generally, the "prior policies" in question are not the policy manuals, but the prior public charge regulations. Thus, this case is distinguishable from Grace v. Whittaker, 344 F. Supp. 3d 96, 113 (D.D.C. 2018), where the district court permitted the plaintiffs to submit "government training manuals, memoranda, and a governmental brief" as extra-record evidence. This evidence of past policies was directly relevant to whether an Attorney General's opinion and interim guidance implementing the opinion departed from past policies. Here, because plaintiffs do not demonstrate that the Agency directly or indirectly relied on the policy manuals, they have not demonstrated

that those policies are the relevant past policies that the court should consider.

To reiterate a critical point, plaintiffs have the burden to rebut, with "clear evidence," the presumption of completeness and, further, the exception is narrowly construed and applied.  Lands Council, 395 F.3d at 1030.  Several decades ago, in Action for Children's Television v. FCC, 564 F.2d 458, 477 (D.C. Cir. 1977), the D.C. Circuit discussed whether "every informational input that may have entered into the decisionmaker's deliberative process" should be produced in the administrative record. The court opined

> why not go further to require the decisionmaker to summarize and make available for public comment every status inquiry from a Congressman or any germane material say a newspaper editorial that he or she reads or their evening-hour ruminations?  In the end, why not administer a lie-detector test to ascertain whether the required summary is an accurate and complete one?  The problem is obviously a matter of degree, and the appropriate line must be drawn somewhere.

Id. (citation omitted).  Similar considerations are present here; the court must draw a line somewhere.  The record does not include "every scrap of paper that could or might have been created" relating to the Rule.  Golden Gate Salmon Ass'n v. Ross, No. 17-cv-01172 LJO-EPG, 2018 WL 3129849, at *4 (E.D. Cal. Jun 22, 2018) (quoting TOMAC v. Norton, 193 F. Supp. 2d 182, 195 (D.D.C. 2002)).  In sum, plaintiffs have not met their burden to demonstrate that the Agency relied on documents, here policy manuals, not in the record.

### ii.       Whether the Policies Constitute Relevant Background Information

The third Inland Empire exception applies to policies that may be produced as relevant background information.  This exception pertains to cases "in which supplementation of the record through discovery is necessary to permit explanation or clarification of technical terms or subject matter involving the agency action under review."  Public Power Council v. Johnson, 674 F.2d 791, 794 (9th Cir. 1982).  Plaintiffs contend that the policy manuals are also relevant background materials.  Mtn. at 6.  The parties disagree whether it is appropriate to consider non-technical, non-scientific

background information as extra-record evidence.  Opp. at 7; Reply at 2.

Generally, the appropriate basis to permit background material in the administrative record is to illuminate and explain technical subject matter.  Thus, the Ninth Circuit in Love v. Thomas stated that a "court may consider, particularly in highly technical areas, substantive evidence going to the merits of the agency's action where such evidence is necessary as background to determine the sufficiency of the agency's consideration."  858 F.2d 1347, 1356 (9th Cir. 1988) (citing Asarco, Inc. v. U.S. Envtl. Prot. Agency, 616 F.2d 1153, 1160 (9th Cir. 1980)).  Likewise, in Bunker Hill Co. v. EPA, 572 F.2d 1286, 1292 (9th Cir. 1977), cited by plaintiffs, the background information in that case dealt with sulfur dioxide emissions.  The court there characterized the background information as "clarification in dealing with a technical subject with respect to which [the court was] not expert[]."  Id. (emphasis added).  Thus, the court permitted such background material because "courts are not straightjacketed to the original record in trying to make sense of complex technical testimony."  Id.; see also San Luis & Delta Mendota Water Authority v. U.S. Dep't of the Interior, 984 F. Supp. 2d 1048, 1060 (E.D. Cal. 2013) (discussing Bunker Hill and other relevant Ninth Circuit case law and concluding that the cases all involve challenges to EPA regulatory actions that involved scientific and technical determinations).

Plaintiffs also cite Tenneco Oil Co. v. Department of Energy, 475 F. Supp. 299, 317 (D. Del. 1979), where the district court stated that it "strain[ed] the Court's imagination to assume that the administrative decision-makers reached their conclusions without reference to a variety of internal memoranda, guidelines, directives, and manuals, and without considering how arguments similar to [the plaintiff's] were evaluated in prior decisions by the agency."  The Tenneco Oil court's reasoning does not support plaintiffs' argument that internal policy manuals should be considered for background purposes. Rather, this case speaks to the second Inland Empire exception concerning whether the decision maker directly or indirectly considered a document.  For the reasons explained above, (supra section B.1.a.i), plaintiffs have not demonstrated a sufficient basis for the

11

court to apply reasoning similar to <u>Tenneco Oil</u>.

Permitting background information is most appropriate when there are technical or scientific matters without which the court cannot determine whether the Agency considered all relevant factors. <u>Asarco</u>, 616 F.2d at 1160. The Public Charge Rule and immigration law generally does not deal with a highly technical area such that policy manuals are needed to inform nonexpert judges. While there may be extenuating circumstances where non-technical background material is proper to add to the administrative record, plaintiffs have not demonstrated by clear evidence that such information is needed in this case.

### iii.    Materials Related to Development of Forms

In passing, plaintiffs request defendants to produce documents related to the development of forms, specifically those related to Form I-944. Mtn. at 9 n.8. Defendants take the position that they do not need to produce any further documents relating to the forms because the complaint does not raise any claims concerning Agency forms or the Paperwork Reduction Act. Further, it is unclear what additional documents plaintiffs request. Opp. at 8. Plaintiffs respond that their general arguments regarding the scope and impact of the Rule subsumes their arguments concerning any forms. Reply at 9–10. They seek inclusion of records related to the development of Form I-944. <u>Id.</u> at 10.

Plaintiffs first raised the argument concerning calculations of administrative burden as part of their motion for preliminary injunction. Dkt. 17 at 27–29. They put forward this argument under the broader thesis that the Rule is arbitrary and capricious. <u>Id.</u> at 19. While plaintiffs did not list the administrative burden of forms as part of the complaint, their arbitrary and capricious argument is broad enough to encompass arguments related to these forms.

However, the only document that the plaintiffs identify with any particularity is the supporting statement submitted by DHS to OMB to justify the collection of information for Form I-944 (assuming such a document exists). <u>See</u> Reply 9–10; Dkt. 152-1, ¶¶ 57–59.

1   Accordingly, the appropriate relief must be tailored to plaintiffs' specific request. If such

2   document (or documents) constituting a supporting statement for Form I-944 exists, then

3   defendants must provide that as part of the record.

4       For the foregoing reasons, the court GRANTS plaintiffs' motions with respect to

5   the policies that defendants do not oppose (and have agreed to provide) and the

6   supporting statement for Form I-944.  The court DENIES plaintiffs' motions with respect

7   to those policy manuals that they have requested beyond those policy manuals that

8   defendants have agreed to provide.

9       **b.**    **Studies and Data Regarding Inadmissibility Decisions**

10      Next, plaintiffs request an article titled "Public Charge Provisions of Immigration

11  Law: A Brief Historical Background," which was published by the Agency the same day

12  as the Rule.  Cisneros Decl. ¶ 67, Ex. 29.  Plaintiffs also ask for studies and data

13  regarding inadmissibility decisions on public charge grounds that were referenced in the

14  article.  Mtn. at 7.  In their opposition brief, defendants agree to provide the article and the

15  materials cited by the article.  Opp. at 8.  They take issue with providing any sources that

16  plaintiffs think were omitted from the article but should have been included.

17      After the hearing, the parties filed a joint status report in which they report that

18  defendants have provided the article, sources cited in the article, including excerpts of

19  books and immigration data cited in the article.  Dkt. 157 at 2.  Plaintiffs state that the

20  article cites immigration data, but defendants did not produce data for the years 1920–65,

21  1981–82, 1988, 1990, and 2018.  Defendants respond that USCIS did not consider such

22  data with respect to the Rule or the article.  Id.  Plaintiffs make a similar request for

23  Department of State visa approval data for fiscal years 1920–2018.  Id. at 3.

24      As previously noted, the administrative record "consists of all documents and

25  materials directly or indirectly considered by agency decision-makers and includes

26  evidence contrary to the agency's position."  Thompson, 885 F.2d at 555 (emphasis and

27  citation omitted).  The statistical data plaintiffs request not only was not cited in the Rule

28  itself but was not cited in an article published the same day as the Rule.  This line of

1  reasoning is too attenuated to demonstrate by clear evidence that defendants indirectly

2  considered the requested statistical data when drafting the Rule.

3       Because defendants do not oppose this request and have already provided much

4  of the relevant material, the court GRANTS plaintiffs' motions with respect to the article

5  and materials directly cited in the article; however, defendants are not required to provide

6  materials that are not directly cited in the article.  Further, defendants are not required to

7  produce any book in its entirety unless such book is not publicly available.

8                c.    **Intra- and Inter-Agency Communications**

9       Plaintiffs request various pre-decisional, deliberative materials including intra- and

10 inter-agency communications, White House communications or agency communications

11 with non-government third parties.  Mtn. at 9.  While plaintiffs have identified limited

12 material from FOIA requests (primarily relating to U.S. Department of Agriculture

13 comments submitted to the Agency pertaining to the Rule), they generally do not put

14 forward a specific list of documents for defendants to provide.  Thus, they also request a

15 privilege log in order to determine which communications, if any, should be added to the

16 record.  Id. at 11.  For their part, defendants attempt to cut this line of argument off, ex

17 ante, by arguing that deliberative communications should not be considered in APA

18 cases.  Opp. at 9.

19                i.    **Whether the Court Can Consider Any Deliberative**

20                     **Material**

21      Generally, judicial review under the APA is based on an agency's stated reasons

22 and an "inquiry into mental processes of administrative decisionmakers is usually to be

23 avoided."  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)

24 (citing United States v. Morgan, 313 U.S. 409, 422 (1941)), abrogated on other grounds

25 by Califano v. Sanders, 430 U.S. 99, 105 (1977).  Yet, there is an inherent tension

26 between avoiding examination of a decisionmaker's pre-decisional deliberative

27 communications and the court's duty to "consider whether the decision was based on a

28 consideration of the relevant factors."  Id. at 417.  As the Ninth Circuit has instructed, the

United States District Court
Northern District of California

14

administrative record consists "of all documents and materials directly or indirectly considered by agency decision-makers." Thompson, 885 F.2d at 555–56.

Reflecting the tension between the deliberative process and reviewing the "whole record," district courts in the Ninth Circuit (as well as across the country) are divided over whether deliberative communications should be permitted at any time to complete the administrative record.  There is a clear trend in district courts of the Northern District permitting deliberative communications so long as plaintiffs rebut the presumption of completeness.  See, e.g., Ctr. for Env'tl Health v. Perdue, No. 18-cv-01763-RS, 2019 WL 6114513, at *2–3 (N.D. Cal. Nov. 18, 2019); Sierra Club v. Zinke, No. 17-cv-07187-WHO, 2018 WL 3126401, at *3 (N.D. Cal. June 26, 2018); Desert Survivors v. U.S. Dep't of the Interior, 231 F. Supp. 3d 368, 381 (N.D. Cal. 2017); Inst. for Fisheries Res. v. Burwell, No. 16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017).

Conversely, there are cases in other districts such as ASSE International, Inc. v. Kerry, No. SACV 14-00534-CJC(JPRx), 2018 WL 3326687, at *2 (C.D. Cal. Jan. 3, 2018), where the court found that "privileged materials are not part of the administrative record in the first instance." See also Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) ("[C]ourts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record.").  There are two reasons cited for this standard.  First, a court's APA review must be based on the agency's stated reasons for the agency action, absent a showing of bad faith or improper behavior.  In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (citations omitted).  Because a reviewing court should limit its review the agency's stated behavior, then courts such as ASSE International interpret that rule as precluding any review of deliberative materials. See also Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs., 631 F. Supp. 2d 23, 27 (D.D.C. 2009) ("[I]nternal deliberative materials are not part of the administrative record.").  Second, "excluding deliberative materials 'prevent[s] injury to the quality of agency

decisions' by encouraging uninhibited and frank discussion of legal and policy matters." Tafas v. Dudas, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) (alteration in original) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150–52 (1975)).

The Ninth Circuit has not directly addressed whether the federal government must produce a privilege log or whether the government may exclude deliberative documents from the administrative record altogether in an APA case. In re United States, 875 F.3d 1200, 1210 (9th Cir.), vacated by 138 S. Ct. 443, 445 (2017) (per curiam). The Ninth Circuit indirectly addressed this issue in In re United States, which came before the court on a writ of mandamus petition filed by the federal government. Id. at 1204. In the mandamus context, the court reviewed for clear error a district court's order requiring the government to produce a privilege log with in camera review of deliberative material. Id. at 1210. The In re United States court cited the several district court opinions requiring a privilege log and in camera analysis of deliberative materials in APA cases. Id. (citing, e.g., Ctr. for Food Safety v. Vilsack, No. 15-cv-01590, 2017 WL 1709318, at *5 (N.D. Cal. May 3, 2017)). Because of the absence of controlling precedent and the deliberative materials did not involve the mental processes of individual agency members, the court found that the district court's order was not clearly erroneous. Id.

The Supreme Court vacated the Ninth Circuit's opinion in part because portions of the district court's order were overly broad. The Court noted that the district court did not resolve threshold arguments going to whether the agency action was committed to agency discretion or whether the INA deprived the court of jurisdiction. In re United States, 138 S. Ct. at 445. The Court, therefore, admonished the district court not to "compel the Government to disclose any document that the Government believes is privileged without first providing the Government with the opportunity to argue the issue." Id.

Reading the Supreme Court and Ninth Circuit's opinions together, a court may order a privilege log and include non-privileged deliberative documents in the record but only after providing the federal government the opportunity to argue the issue. See

United States District Court
Northern District of California

1   Sierra Club, 2018 WL 3126401, at *3 (noting that the Supreme Court's decision in In re

2   United States "require[es] the resolution of facial challenges before addressing the

3   administrative record").  Further, such relief is only appropriate after plaintiffs rebut the

4   presumption of completeness.  S.F. Bay Conservation & Dev. Comm'n v. U.S. Army

5   Corps of Eng'rs, No. 16-cv-05420-RS, 2018 WL 3846002, at *7 (N.D. Cal. Aug. 13, 2018)

6   ("Decisions from this district have consistently held that parties that intend to withhold

7   documents based on the deliberative process privilege must produce a privilege log, at

8   least where the presumption of completeness has been rebutted . . . .").  In the absence

9   of controlling Supreme Court or Ninth Circuit law to the contrary, the court is inclined to

10  compel the inclusion extra-record pre-decisional deliberative documents, but only to the

11  extent plaintiffs are able to rebut the presumption of completeness.[6]

12          ii.      **Whether Plaintiffs Rebut the Presumption of**

13                   **Completeness**

14          The predicate step before applying the deliberative process privilege is for

15  plaintiffs to meet their burden to overcome the presumption of completeness.  See

16  People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric., No. C05-03508 EDL, 2006

17  WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) ("Plaintiffs rebutted the presumption of

18  completeness with a strong showing that the Senate Report and the supporting

19  documents were at a minimum indirectly considered by the Forest Service in its decision-

20  making process for the [Rule at issue].").

21          Sierra Club v. Zinke is helpful to understand what showing is required to

22  demonstrate clear evidence in this context.  In Sierra Club, the plaintiffs sought to add to

23  the administrative record documents produced by the federal government in response to

24  the plaintiffs' Freedom of Information Act ("FOIA") requests.  2018 WL 3126401, at *4.

25  The court had previously determined that the plaintiffs challenged the rule on the ground

26

27  _____

28  [6] The court notes that defendants have not advanced a facial challenge to judicial review similar to the arguments before the Supreme Court, i.e., that the Rule was committed to the Agency's discretion or that the INA strips the court of jurisdiction to review the Rule.

1   that "its stated rationales [were] not legitimate and its justifications [were] inconsistent

2   with and not supported by the evidentiary record."  Id. (citation omitted).  The court

3   examined each FOIA document to determine whether they pertained to the plaintiffs'

4   basis to challenge the rule.  The FOIA documents were relevant to whether the rule was

5   supported by good reasoning and, thus, rebutted the presumption of completeness.  Id.

6       Here, as the result of a FOIA request, plaintiffs produce several email

7   conversations from officials at the U.S. Department of Agriculture ("USDA") in response

8   to requests from the Office of Management and Budget ("OMB") for comments to the

9   Rule.  Cisneros Decl. ¶ 86.  One email, dated April 12, 2018, indicates that USDA

10  officials sent OMB officials some comments concerning the Rule, which had been

11  requested by OMB officials as part of a broader request to federal agencies.  Id. ¶ 87, Ex.

12  37.  USDA's comment was not included in the administrative record, nor were comments

13  from other agencies.  See id., Ex. 1.  If OMB requested comments from various agencies

14  for this particular Rule and those agencies then provided those comments, the Agency

15  either directly or indirectly considered these comments.  Thus, it is reasonable to assume

16  that if USDA submitted comments, then other agencies did so as well.  This situation is

17  similar to Sierra Club, where plaintiffs used the FOIA process to identify potential

18  documents not in the administrative record and the court determined that the documents

19  identified through FOIA rebutted the presumption of completeness.

20          **iii.      The Remedy to Which Plaintiffs Are Entitled**

21      While the court has determined that plaintiffs have rebutted the presumption of

22  completeness, this is not license for a broad mandate to sweep in any and every

23  document, email, or memoranda that is conceivably related to the Rule.  The court's

24  finding is limited to the category of documents that plaintiffs were able to present clear

25  evidence to rebut the presumption, i.e., inter-agency communications providing

26  comments to DHS, and in DHS's possession, concerning the Rule.  The district court in

27  Golden Gate Salmon Association v. Ross, 2018 WL 3129849, at *4, aptly summarized

28  the appropriate relief:

United States District Court
Northern District of California

> Plaintiffs assert that the presumption is "lost" when a plaintiff identifies wrongly omitted materials with specificity, and provides reasonable grounds for the belief that those documents were considered by the agency.  This is true as to the wrongly omitted materials, but to the extent Plaintiffs suggest that rebutting the presumption as to one document (or even an entire category of materials) changes how the Court must review other materials . . . the Court does not agree.

Other courts have taken a similar category-by-category or document-by-document approach to reviewing whether documents rebut the presumption of completeness.  See, e.g., Sharks Sports & Entm't LLC v. Fed. Transit Admin., 2020 WL 511998, at *3; California v. Bureau of Land Mgmt., No. 18-cv-00521-HSG, 2019 WL 1455335, at*3 (N.D. Cal. Apr. 2, 2019); Sierra Club, 2018 WL 3126401, at *4, Desert Survivors, 231 F. Supp. 3d at 372.  Because plaintiffs have only rebutted the presumption of completeness with respect to inter-agency communications received by DHS relating to the Rule, the appropriate relief is to complete the record only with respect to those types of documents.

Defendants contend that the deliberative process privilege shields from public disclosure confidential inter-agency memoranda on matters of law or policy.  Opp. at 16.  The question before the court is not whether the deliberative process privilege applies, but whether plaintiffs have rebutted the presumption of completeness with clear evidence.  The cases cited by defendants stand for the proposition that the deliberative process privilege can be asserted by the government in the context of inter-agency documents.  In National Wildlife Federation v. U.S. Forest Service, 861 F.2d 1114, 1116 (9th Cir. 1988), the Ninth Circuit noted, in the context of a FOIA exemption review, that the "'deliberative process' privilege . . . shields from public disclosure confidential inter-agency memoranda on matters of law or policy."  However, the ultimate issue was whether the district court erred in determining whether certain documents, after an in camera review, should be released.  Similarly, Hunton & Williams LLP v. U.S. Environmental Protection Agency, 248 F. Supp. 3d 220, 247 (D.D.C. 2017), the district court, also while reviewing a FOIA exemption request, noted that the deliberative process privilege can apply between two agencies.  Whether the privilege can or does apply to

1   any particular document are properly considered when the government produces the

2   document and claims the privilege.

3        Finally, the court notes that there are certain types of communications that are not

4   appropriate to consider, even if they fall within the category of documents that defendants

5   must produce.  The Ninth Circuit has held that it would not be permissible for the court to

6   consider "the internal deliberative processes of the agency [or] the mental processes of

7   individual agency members."  Portland Audubon Soc., 984 F.2d at 1549; see also

8   Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) ("[S]uch

9   inquiry into the mental processes of administrative decisionmakers is usually to be

10  avoided." (citation omitted)).  Thus, while it would be appropriate for defendants to

11  provide items such as studies, data, and official memoranda, it would not be appropriate

12  to include communications codifying the internal deliberative processes of individual

13  agency members.  See In re United States, 875 F.3d at 1210 ("Where . . . an agency is

14  headed by a multi-member board, the deliberations among those members are

15  analogous to the internal mental processes of the sole head of an agency, and thus are

16  generally not within the scope of the administrative record." (citing Portland Audubon, 984

17  F.2d at 1549)).  Thus, defendants are not required to submit the deliberative

18  communications of individual agency members.  This limiting instruction reduces the

19  burden on defendants while also recognizing plaintiffs have met their burden in a specific

20  category of documents.

21       For the foregoing reasons, the court GRANTS plaintiffs' motions to complete the

22  record with regard to inter-agency communications submitted to DHS and under DHS's

23  control, relating to the Rule, and not involving the mental processes of individual agency

24  members.

25                    **d.    White House Communications**

26       Defendants take issue with disclosing any communications related to the White

27  House.  Opp. at 14.  They contend that White House communications raise "special

28  considerations" due to the "Executive Branch's interest in maintaining the autonomy of its

United States District Court
Northern District of California

office." Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 385.  Plaintiffs reply that Cheney does not apply because they do not request discovery against the President or Vice President.  Reply at 11 n.12.

As an initial matter, it is not clear the extent to which White House communications is an issue requiring the court's adjudication.  Plaintiffs have not directed the court to any specific White House communications that rebut the presumption of completeness.  It is conceivable, however, that the court's finding regarding inter-agency communications could include communications from White House staff to DHS.  For this narrow category of documents, the court examines whether defendants must produce any White House communications that meet the relief outlined above.

The parties cite Cheney v. U.S. District Court as the leading case on this question. Cheney involved whether a court of appeals could exercise the writ of mandamus to modify or dissolve discovery orders directing the Vice President and other senior Executive Branch officials to produce information about a task force.  542 U.S. at 372. The Supreme Court cited long-standing separation-of-powers considerations why such a mandamus petition involving the President or Vice President would be treated differently than other individuals.  See id. at 381–82.  The Court noted that the discovery order was directed to the "Vice President and other senior Government officials who served on the [panel] to give advice and make recommendations to the President." Id. at 385.  The Court then stated that it has held on more than one occasion that, "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." Id. (alterations in original) (quoting Clinton v. Jones, 520 U.S. 681, 707 (1997)).

Thus, some deference in this area is certainly owed to the office of the Chief Executive.  Yet, several mitigating considerations are also relevant.  First, Cheney's separation-of-power considerations were largely motivated by the inclusion of the Vice President in the discovery order.  Id. at 382 ("These separation-of-powers considerations should inform a court of appeals' evaluation of a mandamus petition involving the

21

United States District Court
Northern District of California

President or Vice President.").  That consideration is not present here.  Additionally, Cheney did not involve the APA's requirements to provide a complete administrative record and, though the opinion was vacated on other grounds, In re United States interpreted Cheney as not "imposing a categorical bar against requiring DHS to either include White House documents in a properly-defined administrative record or assert privilege individually as to those documents."  875 F.3d at 1209.  The final consideration is that the remedy identified by the court is not to order the White House to produce documents; rather, it is to order DHS to produce any communications meeting the court's criteria that DHS has in its possession.  This solution is in accord with the Ninth Circuit's dicta in In re United States finding no clear error for a district court to require DHS to produce White House documents considered by the DHS Secretary.  Id.  For the foregoing reasons, the court GRANTS plaintiffs' motions with respect to any White House communications in DHS's possession and meeting the court's criteria discussed above, supra, section B.1.c.

### e.  Missing Comments from the Public

In their reply brief, plaintiffs discuss the parties' inability to resolve a discrepancy between the number of public comments submitted during the rulemaking process and the number of comments produced in the administrative record.  Reply at 6.  The government's website for comments, Regulations.gov, states that over 260,000 comments were submitted, but the administrative record includes only 213,959 separate documents.  Id.  Plaintiffs ask the court to order defendants to provide accurate accounting of the discrepancy.  Defendants state in their opposition brief; "[t]he parties are continuing to confer about public comments included in the administrative record to ensure that all 266,077 public comments are included."  Opp. at 3 n.2.  At the hearing, defendants acknowledged the requirement to account for all comments and explained that multiple comments may be included in one document.

Because defendants do not oppose this request, the court GRANTS plaintiffs' motions with regard to the public comments.  Defendants are to account for any

discrepancies between the comments submitted on the government's website and those provided in the administrative record.

## 2.    Discovery on Constitutional Claims

Plaintiffs request discovery on their constitutional claims.  They contend that constitutional claims are reviewed independently of APA claims and, therefore, some civil discovery is appropriate.  Mtn. at 15.  Defendants argue that constitutional claims are subject to the terms and limitations of the APA and plaintiffs are entitled to nothing more than the administrative record.  Opp. at 16.

### a.    Whether the APA Governs Plaintiffs' Constitutional Claims

In addressing whether the APA governs plaintiffs' discovery request, the court considers two predicate questions.  First, may plaintiffs bring an equitable cause of action for violation of the Constitution against any agency action?  Second, if they have a cause of action for a constitutional claim, is that claim necessarily governed by the APA?  The Ninth Circuit's opinion in Sierra Club v. Trump, 929 F.3d 670 (9th Cir. 2019), is controlling on both questions.  Sierra Club dealt with a challenge to the Department of Defense's use of funds that the President repurposed by proclamation to construct a border wall on the southern border of the United States.  Id. at 677–83.  The plaintiffs brought both a constitutional claim, alleging a violation of the Appropriations Clause, and an APA claim. The federal government argued that the plaintiffs did not have a cause of action for either claim.  The court examined whether the plaintiffs could bring "an equitable action to enjoin unconstitutional official conduct, or under the judicial review provisions of the . . . APA, as a challenge to a final agency decision that is alleged to violate the Constitution, or both."  Id. at 694 (citation omitted).

First, the court determined whether the plaintiffs could assert an equitable cause of action against federal officers for violations of the Appropriations Clause.  Beginning with the constitutional claim, the court recognized that "'federal courts may in some circumstances grant injunctive relief against' federal officials violating federal law."  Id. at 694 (quoting Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 326 (2015)).

United States District Court
Northern District of California

1    However, the court noted that Congress may revoke a federal court's ability to enjoin

2    federal officials where a statutory provision expressly provides a method of enforcing a

3    substantive right or lacked a judicially administrable standard.  Id. (citing Armstrong, 575

4    U.S. at 328).  Barring clear and convincing evidence of congressional intent, the judicial

5    review of administrative action is the rule.  See City of Chicago v. Int'l Coll. of Surgeons,

6    522 U.S. 156, 183 (1997) (Ginsburg, J., dissenting) (citing Califano v. Sanders, 430 U.S.

7    99, 106–06 (1977)).  In Sierra Club, the court applied this rule to determine that Congress

8    had not intended to foreclose equitable relief for violations of the Appropriations Clause.

9    929 F.3d at 697.

10       Second, the court reviewed whether the plaintiffs had an APA cause of action,

11   stating that 5 U.S.C. § 706(2)(B) permits a federal court to "hold unlawful and set aside

12   agency action . . . found to be . . . contrary to constitutional right, power, privilege, or

13   immunity. Id. at 698.  The court held that the plaintiffs could assert a cause of action

14   under the APA so long as Congress had not limited review through other statutes or

15   committed the administrative decision to agency discretion.  Id. (citing 5 U.S.C.

16   §§ 701(a), 704, 706; and Bennett v. Spear, 520 U.S. 154, 175 (1997)).  Neither applied to

17   the Sierra Club plaintiffs and they could bring a challenge under 5 U.S.C. § 706(2)(C).

18       Third, the Sierra Club court then dealt with the issue whether "the availability of an

19   APA cause of action precludes Plaintiffs' equitable claim."  Id. at 699.  The court noted

20   that there is a basic presumption that APA provides for judicial review of agency action,

21   but "this does not mean the APA forecloses other causes of action."  Id. (citing

22   Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv., 139 S. Ct. 361, 370 (2018)).  In Navajo

23   Nation, 876 F.3d at 1170 (citation omitted), the Ninth Circuit explained that "a court is

24   foreclosed by [APA section] 704 from entertaining claims brought under the APA seeking

25   review of non-final agency action (and not otherwise permitted by law)," but "no such

26   limitation applies to other types of claims (like constitutional claims . . . )."  In

27   Presbyterian Church v. United States, allowed constitutional claims to proceed without

28   even deciding whether an APA cause of action was available.  Sierra Club, 929 F.3d at

699 (citing Presbyterian Church, 870 F.2d 518 (9th Cir. 1989)).  Considering these two cases together, Sierra Club held that Navajo Nation and Presbyterian Church "clearly contemplate that claims challenging agency actions—particularly constitutional claims—may exist wholly apart from the APA."  Id.  One other district court in this circuit has cited Sierra Club's holding and then concluded that review of the plaintiffs' "constitutional claims, independently of their APA claims, is appropriate."  Al Otro Lado, Inc. v. McAleenan, 394 F. Supp. 3d 1168, 1217 (S.D. Cal. 2019).

Applying Sierra Club here, to determine whether plaintiffs have a cause of action, the court examines whether Congress intended to displace an equitable constitutional claim against an agency action.  Plaintiffs bring causes of action for violations of the Due Process Clause of the Fifth Amendment, which the Supreme Court has interpreted to prohibit the federal government from denying equal protection of the laws.  Bolling v. Sharpe, 347 U.S. 497, 500 (1954).  In Davis v. Passman, the Supreme Court explained that

> "it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the State to do."  Indeed, this Court has already settled that a cause of action may be implied directly under the equal protection component of the Due Process Clause of the Fifth Amendment in favor of those who seek to enforce this constitutional right.

442 U.S. 228, 242 (1979) (citations omitted).  Thus, an equitable cause of action exists for equal protection violations of the Fifth Amendment's Due Process Clause.

This final agency action is not committed to DHS's discretion and plaintiffs may also bring a cause of action under the APA against agency actions that are contrary to constitutional right, power, privilege, or immunity.  5 U.S.C. § 706(2)(C).  Because plaintiffs may bring either an equitable cause of action or an APA claim, Sierra Club's holding controls whether the cause of action is necessarily governed by the APA.  Plaintiffs' claim "may exist wholly apart from the APA."  929 F.3d at 699.  It follows, therefore, that if plaintiffs have a constitutional claim that exists outside of the APA, then

25

the APA's administrative record requirement does not govern the availability of discovery.

### b.    District Courts Decline to Draw a Bright Line Rule

Defendants cite several cases for the proposition that courts routinely reject attempts by plaintiffs to obtain discovery for constitutional claims against the government. In reality, district courts have struggled to coalesce around a categorical rule and instead apply a fact-specific inquiry to reach outcomes that have rejected discovery for constitutional claims in some instances and permitted discovery in others.  Further, the cases cited by defendants presumed that the APA governed and did not have the benefit of controlling circuit law on the issue of whether a constitutional claim may be brought independent of the APA.

There are few appellate cases discussing this issue.  In Harkness v. Secretary of Navy, 858 F.3d 437, 451 & n.9 (6th Cir. 2017), the Sixth Circuit rejected an argument that discovery was necessary because constitutional issues could not be decided on the administrative record for two reasons.  First, the court noted that 5 U.S.C. § 706(2)(B) permits review of constitutional claims under the APA using the administrative record. Second, the plaintiff's Establishment Clause claim was not a standalone claim because 10 U.S.C. § 14502 provided a particular mechanism to challenge constitutional error in promotion boards.  Id. at 446 n.6.  Harkness does not require a different outcome than Sierra Club; both cases examined whether the plaintiff(s) could bring a standalone constitutional claim.  The statutory scheme in Harkness precluded an Establishment Clause claim; the Appropriations Clause permitted a standalone challenge in Sierra Club.

Several district courts have determined that constitutional claims are governed by the APA and, therefore, constitutional claims should be decided on the administrative record without further discovery.  See, e.g., Bellion Spirits, LLC v. United States, 335 F. Supp. 3d 32, 43 (D.D.C. 2018); Chiayu Chang v. U.S. Citizenship & Immigration Servs., 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (collecting cases).  Those cases have noted the lack of applicable circuit law.  For example, in Northern Arapaho Tribe v. Ashe, 92 F. Supp. 3d 1160, 1171 (D. Wyo. 2015), the district court noted that "[w]hether a district

court must limit its constitutional review of agency action to the administrative record is [a] question that has not been definitively answered by the Tenth Circuit or the Supreme Court."

On the other hand, several courts recognize that discovery may be appropriate for a constitutional claim involving agency action.  Mayor & City Council of Baltimore v. Trump, —F. Supp. 3d—, No. CV ELH-18-3636, 2019 WL 6970631, at *7 (D. Md. Dec. 19, 2019) (collecting cases); New York v. U.S. Dep't of Commerce, 345 F. Supp. 3d 444, 451–52 (S.D.N.Y. 2018); Grill v. Quinn, No. 10-cv-0757 GEB GGH PS, 2013 WL 3146803, at *6 n.8 (E.D. Cal. June 18, 2013).  As the district court in Baltimore pointed out, cases permitting discovery on constitutional claims are in accord "with the foundational tenet of constitutional adjudication that 'where constitutional rights are in issue,' courts must ensure that 'the controlling legal principles [are] applied to the actual facts of the case.'"  2019 WL 6970631, at *7 (alteration in original) (quoting Pickering v. Bd. of Ed. of Twp. of High Sch. Dist. 205, Will Cty., 391 U.S. 563, 578 n.2 (1968) (Douglas, J., concurring)).

The broad spectrum of opinions demonstrates a tension and broad disagreement in the reasoning and outcomes in these types of cases.  This is exacerbated by the lack of controlling authority and usually results in a case-by-case approach to discovery.  Most courts decline to draw a bright line or categorical rule and instead examine the particular facts of the claims involved and the discovery requested.  See, e.g., Almaklani v. Trump, —F. Supp. 3d—, No. 18-CV-398 (NGG) (CLP), 2020 WL 1282920, at *7 (E.D.N.Y. Mar. 17, 2020) (agreeing "that there may be circumstances in which discovery to supplement the record may be necessary," but declining to permit "broad ranging discovery under Rule 26"); Jiahao Kuang v. U.S. Dep't of Def., No. 8-cv-03698-JST, 2019 WL 293379, at *2 (N.D. Cal. Jan. 23, 2019) ("[T]he welter of cases underlines the need for a flexible approach, tailored to the facts and claims of the case."); Bellion Spirits, 335 F. Supp. 3d at 43 ("Given the dearth of caselaw on point in this circuit, the Court declines to adopt any bright line or categorical rule.").  Given the lack of controlling authority, this approach is

sensible and appropriately focuses on the facts and claims of individual cases.

### c. Facts and Claims of Plaintiffs' Complaints

Accordingly, the court turns to an analysis of the particular facts and claims at issue here.  A few district courts faced with both APA and constitutional claims determined that the constitutional claims "fundamentally overlap" with the APA claims and thus discovery was unnecessary.  Ala.-Tombigbee Rivers Coal. v. Norton, No. CV 01-S-0194-S, 2002 WL 227032, at *3-6 (N.D. Ala. Jan. 29, 2002); see also Bellion Spirits, 335 F. Supp. 3d at 43-44; Chiayu Chang, 254 F. Supp. 3d at 162 (finding that the "plaintiffs' constitutional claims here are fundamentally similar to their APA claims" and denying discovery).  Alternatively, some courts have permitted some discovery when the APA and constitutional claims diverge in some meaningful way.  For example, in Manker v. Spencer, No. 18-cv-372, 2019 WL 5846828, at *19 (D. Conn. Nov. 7, 2019), the district court permitted discovery where the plaintiffs challenged the general course of conduct of the Naval Discharge Review Board, but the agency sought to limit review to the administrative record pertaining only to the plaintiffs.  Thus, the court reasoned ""[w]here a plaintiff challenges an agency's general course of conduct rather than a discrete adjudication, limited discovery . . . may be necessary where the administrative record does not contain evidence of the challenged action." Id.

In Vidal v. Duke, No. 16-cv-4756, 2017 WL 8773110, at *3 (E.D.N.Y. Oct. 17, 2017), the plaintiffs sought discovery in an action challenging the government's decision to end the Deferred Action for Childhood Arrivals ("DACA") program and also challenging collateral decisions affecting DACA beneficiaries on constitutional grounds.  The collateral decisions included a due process claim for failure to provide individualized notice to DACA recipients who were eligible to renew their deferred action and equitable estoppel claims against the government's use of information from DACA applications for immigration enforcement purposes.  Id. at *2.  The court noted that the constitutional claim and equitable estoppel claims "do not challenge the decision to end the DACA program, but instead challenge how Defendants communicated that decision to DACA

beneficiaries."  Id.  The court then permitted discovery on the grounds that the administrative record was limited to the decision to end the DACA program and "sheds no light on why the Government allegedly made these collateral decisions."  Id.

This case falls somewhere in between cases like Vidal and Manker that permitted discovery due to the divergence of APA and constitutional claims and cases such as Alabama-Tombigbee Rivers Coalition and Chiayu Chang where the APA and constitutional claims fundamentally overlapped.  Reviewing plaintiffs' complaints demonstrates that they are alleging different factual allegations between the APA claims and the constitutional claims.  While plaintiffs' APA and constitutional claims challenge the same Rule and request the same relief (thus, this case is not squarely in line with Vidal and Manker), the claims do not fundamentally overlap.

In the State plaintiffs' complaint, paragraphs 111 through 126 discuss the State plaintiffs' claims that the Rule is contrary to law and paragraphs 127 through 141 discuss the State plaintiffs' claims that the Rule fails to offer adequate justification.  Beginning with paragraph 281, the State plaintiffs' complaint[7] sets forward allegations that the Rule is motivated by racial and ethnic animus toward non-white, non-European immigrants. These allegations include numerous statements and actions by the President that purportedly demonstrate improper racial animus.  See, e.g., Compl. ¶ 292.  The allegations also involve senior administration leadership, including Acting USCIS Director Cuccinelli.  Id. ¶ 299.  The complaint also alleges that the White House, in particular senior advisor Stephen Miller, improperly manipulated the agency process.  Id. ¶¶ 302, 306.  Similarly, the organization plaintiffs allege that "L. Francis Cissna was directed to step down as director of USCIS, in part because Stephen Miller had been 'agitating for Mr. Cissna's removal for months' due to Mr. Miller's stance that Mr. Cissna was 'moving too slowly in implementing' the Regulation."  No. 19-cv-04980-PJH, Dkt. 1, ¶ 126 (citation omitted).  These allegations are different than plaintiffs' APA allegations that the Agency

---

[7] The organization plaintiffs' complaint contains similar allegations in paragraphs 119 through 127.  No. 19-cv-04980-PJH, Dkt. 1.

1    promulgated a rule that was contrary to law or the procedure followed by the Agency was

2    flawed.  Ultimately, these allegations demonstrate that the administrative record is limited

3    to the Agency's rulemaking process and sheds no light on actions taken by senior

4    administration officials.

5         Defendants, relying on Trump v. Hawaii, 138 S. Ct. 2392 (2018), also contend that

6    the court should apply highly deferential constitutional standard of review and under a

7    rational basis standard, discovery is inappropriate.  Opp. at 18–19.  Plaintiffs, citing

8    Village of Arlington Heights v. Metropolitan Housing Development Corporation, 429 U.S.

9    252 (1977), argue that the court should apply a more searching standard of review and

10   accompanying sensitive inquiry into circumstantial and direct evidence of potential

11   unconstitutional behavior.  Mtn. at 13.  It is entirely understandable why each party seeks

12   to establish a foothold regarding the appropriate constitutional standard of review in this

13   case.  See Saget v. Trump, 375 F. Supp. 3d 280, 366–67 (E.D.N.Y. 2019) (discussing

14   applicability of Hawaii and Arlington Heights to Equal Protection claims against agency

15   action).  Yet, the court declines to determine such a standard in the context of a motion to

16   compel where the parties have not fully briefed this issue.  Cf. Baltimore, 2019 WL

17   6970631, at *9–12 (determining applicable standard of review and declining to permit

18   discovery based on rational basis review).  Moreover, defendants have not cited any

19   controlling case that prohibits discovery even in cases governed by rational basis review.

20   The court does not foreclose the possibility that discovery may not be appropriate if

21   rational basis review applies to this case, but simply notes that it is premature to make

22   such a finding at this stage when the court has not addressed the applicable standard of

23   review.  Accordingly, plaintiffs' motions to take discovery on their constitutional claims is

24   GRANTED.

25        This brings the court to the appropriate remedy.  Plaintiffs oppose a stay pending

26   defendants' forthcoming motion to dismiss because they bring "a straightforward claim

27   that Defendants were motivated by racial animus when advancing the Rule."  Mtn. at 19.

28   Defendants contend that the court should defer discovery until resolution of defendants'

United States District Court
Northern District of California

forthcoming motion to dismiss that may be dispositive of the complaint.  Opp. at 20.  The court agrees with defendants; permitting discovery prior to assessing viability of plaintiffs' claims and directly addressing the appropriate standard of review and the implications of that standard would be premature.  As noted by a different court, "even where plaintiffs have asserted constitutional claims, 'wide-ranging discovery is not blindly authorized at a stage in which such an administrative record is being reviewed.'"  Tafas, 530 F. Supp. 2d at 802 (quoting P.R. Public Housing Admin. v. U.S. Dep't of Housing & Urban Dev., 59 F. Supp. 2d 310, 327 (D.P.R. 1999)).

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART plaintiffs' motions to complete the record and GRANTS plaintiffs' motions to compel discovery.  However, the court STAYS discovery until resolution of defendants' forthcoming motion to dismiss.  Should defendants choose not to file a motion to dismiss, the parties may file an appropriate request to resolve the stay.

**IT IS SO ORDERED.**

Dated: April 1, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge