1
2
3
4
5
6
7
8
9
10
11
12
13

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LA CLINICA DE LA RAZA, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No.  19-cv-04980-PJH

**ORDER GRANTING MOTION FOR RECONSIDERATION**

Re: Dkt. No. 183

14    Before the court is plaintiffs La Clínica De La Raza, California Primary Care

15 Association, Maternal and Child Health Access, Farmworker Justice, Council on

16 American Islamic Relations–California, African Communities Together, Legal Aid Society

17 of San Mateo County, Central American Resource Center, and Korean Resource

18 Center's (collectively, "plaintiffs") motion for reconsideration.  The matter is fully briefed

19 and suitable for decision without oral argument.  Having read the parties' papers and

20 carefully considered their arguments and the relevant legal authority, and good cause

21 appearing, the court hereby rules as follows.

22                                    **BACKGROUND**

23    On May 20, 2020, plaintiffs filed a first amended complaint ("FAC") asserting eight

24 causes of action: (1) Violation of the Administrative Procedure Act ("APA"), 5 U.S.C.

25 § 706—Contrary to Law; (2) Violation of APA, 5 U.S.C. § 706—Arbitrary and Capricious;

26 (3) Violation of APA, 5 U.S.C. § 706—Arbitrary and Capricious; (4) Violation of APA, 5

27 U.S.C. § 706—Arbitrary and Capricious or Not in Accordance with Law; (5) Violation of

28 the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 et seq., and DHS Organic

1   Statute, 6 U.S.C. § 113; (6) Violation of the FVRA, 5 U.S.C. § 3345 et seq.; (7) Violation

2   of the Fifth Amendment; and (8) Declaratory Judgment Act—Unlawfully Appointed

3   Agency Director.  Dkt. 161.  The FAC names as defendants Donald J. Trump, the

4   Department of Homeland Security ("DHS" or the "Department"), the U.S. Citizenship and

5   Immigration Service ("USCIS"), Chad Wolf, and Kenneth Cuccinelli (collectively

6   "defendants") and challenges promulgation of DHS's final rule entitled "Inadmissibility on

7   Public Charge Grounds," published on August 14, 2019.  See Inadmissibility on Public

8   Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019) ("the Rule").

9        The FAC alleges that former Acting Secretary of Homeland Security Kevin

10  McAleenan assumed the role in violation of the FVRA and DHS's organic statute and

11  therefore the unlawful appointment renders the Rule invalid.  See, e.g., FAC ¶ 138.  On

12  August 7, 2020, this court granted in part, denied in part, and deferred ruling in part

13  defendants' motion to dismiss the FAC and, as relevant here, granted defendants' motion

14  to dismiss plaintiffs' third, fifth, and eighth claims concerning McAleenan's appointment

15  as Acting Secretary.  Dkt. 177 at 26.  Plaintiffs now move for reconsideration of the

16  court's determination pursuant to Federal Rule of Civil Procedure 54(b).

17                                          **DISCUSSION**

18  **A.    Legal Standard**

19       Federal Rule of Civil Procedure 54(b) provides in part that "any order . . . that

20  adjudicates fewer than all the claims or the rights and liabilities of fewer than all the

21  parties . . . may be revised at any time before the entry of a judgment adjudicating all the

22  claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b); Moses H. Cone

23  Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 & n.14 (1983) ("[E]very order short

24  of a final decree is subject to reopening at the discretion of the district judge.").

25  "Reconsideration is appropriate if the district court (1) is presented with newly discovered

26  evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if

27  there is an intervening change in controlling law."  Sch. Dist. No. 1J, Multnomah Cty., Or.

28  v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted); see Civ. L.R. 7-9(b).

United States District Court
Northern District of California

**B.      Analysis**

   **1.      Summary of Prior Order**

Plaintiffs' third, fifth, and eighth claims allege that former Acting Secretary McAleenan assumed that role in violation of the Homeland Security Act of 2002 ("HSA") and the FVRA and therefore the Rule should be vacated pursuant to the APA, the FVRA, and the Declaratory Judgment Act.  FAC ¶¶ 203, 211–13, 230.  Defendants moved to dismiss these claims, arguing that former Secretary Kirstjen Nielsen established a new order of succession pursuant to 6 U.S.C. § 113(g)(2) and under that revised order, McAleenan validly assumed the role of Acting Secretary.  Dkt. 166 at 18.  In response, plaintiffs argued that, when Secretary Nielsen resigned and McAleenan assumed the role of Acting Secretary, DHS's order of succession—Delegation No. 00106—explicitly provided that in cases of resignation, Executive Order 13753 governed the orderly succession of officials and Secretary Nielsen did not amend the order of succession in cases of resignation.  Dkt. 167 at 18.  In turn, Executive Order 13753 provided a list of eighteen officers and McAleenan was not next in line according to this list.  Id.  In reply, defendants argued that in her April 2019 order, Secretary Nielsen exercised her authority to designate the order of succession pursuant to 6 U.S.C. § 113(g)(2) and that order superseded any prior order of succession.  Dkt. 172 at 14.

This court determined that, contrary to defendants' argument, Secretary Nielsen's April 9, 2019 order only amended the portion of Delegation No. 00106 that applied in cases when the Secretary is unavailable to act during a disaster or catastrophic emergency but did not apply in cases of death, resignation, or inability to perform the functions of the office.  Dkt. 177 at 25.  The court agreed with plaintiffs that Executive Order 13753 controlled the order of succession in cases of resignation and that McAleenan, as the Commissioner of Customs and Border Patrol ("CBP"), was seventh in line with two individuals ahead of him.  Id. at 26.  However, the court relied on subsection (b)(ii) of Executive Order 13753, which states that "[n]otwithstanding the provisions of this section, the President retains discretion, to the extent permitted by the

3

1    Vacancies Act, to depart from this order in designating an acting Secretary." Id.  The

2    court reasoned that because plaintiffs did not allege that McAleenan failed to meet one of

3    the three options under the FVRA for the temporary appointment of officers, the

4    President had discretion to appoint McAleenan as Acting Secretary.  Id.  Thus, plaintiffs

5    failed to state a claim based on invalid appointment.  Id.

6         **2.    New Evidence**

7         In their motion for reconsideration, plaintiffs offer four pieces of evidence that

8    occurred after this court's prior order that purportedly establish that McAleenan was not

9    appointed as acting secretary pursuant to the FVRA and the court should therefore

10   modify its prior order.  First, on August 14, 2020, defendants DHS and Chad Wolf

11   appeared before the district court for the District of Maryland and at a hearing on a

12   motion for preliminary injunction, they repeatedly disavowed that the President appointed

13   McAleenan pursuant to the FVRA.  Mtn. at 4.  Second, also on August 14, 2020, the

14   Government Accountability Office ("GAO") issued an opinion in which it determined that

15   McAleenan was not validly appointed to his position as Acting Secretary.  Id. at 5–6.

16   Third, DHS submitted a letter to the GAO on August 17, 2020 demanding that GAO

17   withdraw its opinion and stated that GAO's report did not concern an appointment under

18   the FVRA.  Id. at 6.  Fourth, Acting Secretary Wolf has publicly disagreed with the GAO

19   report and represented that the authority to appoint successors was governed by the

20   Homeland Security Act, not the FVRA.  Id. at 7.

21        The court discusses this new evidence in the broader context of the FVRA, the

22   HSA, and the DHS's order of succession.  Article II, section 2 of the Constitution requires

23   that the President obtain "the Advice and Consent of the Senate" to appoint "Officers of

24   the United States."  U.S. Const., art. II, § 2, cl. 2.

25            Given this provision, the responsibilities of an office requiring
             Presidential appointment and Senate confirmation—known as
26            a "PAS" office—may go unperformed if a vacancy arises and
             the President and Senate cannot promptly agree on a
27            replacement.  Congress has long accounted for this reality by
             authorizing the President to direct certain officials to temporarily
28            carry out the duties of a vacant PAS office in an acting capacity,

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    without Senate confirmation.

2    N.L.R.B. v. SW Gen., Inc., 137 S. Ct. 929, 934 (2017).

3         The FVRA is the current version of Congress's authorization for the President to

4    temporarily appoint acting officers.  5 U.S.C. § 3345 et seq.  Section 3345(a) outlines

5    three categories of individuals who may become acting officers.  The first category, the

6    first assistant to the office, "automatically fills the vacancy as an acting officer unless

7    someone else is appointed."  Hooks v. Kitsap Tenant Support Servs., Inc., 816 F.3d 550,

8    557 (9th Cir. 2016) (citing 5 U.S.C. § 3345(a)(1)).

9              Signaled by the phrase "notwithstanding paragraph (1)," the
10             statute goes on to provide two ways the President may override
             the automatic operation of (a)(1).  First, (a)(2) permits the
11             President to designate an acting officer from the second
             category of eligible candidates—prior Senate-confirmed
12             officers.  Alternatively, under (a)(3), the President may
             designate a within-agency officer or employee, provided that
13             the individual served in the Executive agency for not less than
             ninety days in the year preceding the date of the vacancy in a
14             position with a rate of pay equal to or greater than the minimum
             GS–15 rate.

15   Id.  Each of the three categories in § 3345(a)[1] is subject to the time limit in section 3346,

16   which generally provides that "the person serving as an acting officer as described under

17   section 3345 may serve in the office—for no longer than 210 days beginning on the date

18   the vacancy occurs."  5 U.S.C. § 3346(a)(1).

19        Next, section 3347, the exclusivity provision, states that sections 3345 and 3346

20   are the exclusive means for temporarily authorizing an acting officer to perform the

21   functions and duties of any office subject to Senate confirmation.  5 U.S.C. § 3347(a).

22   However, section 3347 carves out an exception to the exclusivity provision for "a

23   statutory provision" that either designates an officer or employee to perform the functions

24   and duties of an office or expressly authorizes the President, a court, or the head of an

25   _____

26   [1] The three categories in § 3345(a) are also subject to the limitations of § 3345(b).
     "Subsection (b)(1) . . . precludes someone from continuing to serve as an acting officer
27   after being nominated to the permanent position, unless he or she had been the first
     assistant for ninety days of the prior year."  Hooks, 816 F.3d at 558 (citing 5 U.S.C.
28   § 3345(b)(1)).  There is no allegation that the President nominated McAleenan for the
     permanent Secretary position and subsection (b)(1) does not appear to apply here.

Executive department to designate such an officer or employee.  5 U.S.C. § 3347(a)(1).

"Accordingly, when such an agency-specific statute exists, the FVRA is no longer the

'exclusive' means, but rather is 'a means' of selecting a person to serve in an acting

capacity for a vacant PAS office."  Casa de Md., Inc. v. Wolf, — F. Supp. 3d —, 2020 WL

5500165, at *16 (D. Md. Sept. 11, 2020) (citing Hooks, 816 F.3d at 556; Guedes v.

Bureau of Alcohol, Tobacco, Firearms, & Explosives, 356 F. Supp. 3d 109, 143 (D.D.C.

2019) ("Agency-specific statutes like the AG Act were expected to operate alongside the

FVRA, not to displace it"), aff'd on other grounds, 920 F.3d 1, 12 (D.C. Cir. 2019) (per

curiam)).

On December 9, 2016, President Obama signed an executive order in which he

exercised his authority under the FVRA, 5 U.S.C. § 3345, to designate in advance the

order of succession to perform the functions and duties of the office of the Secretary of

Homeland Security.  See Executive Order 13753, 81 Fed. Reg. 90667, 90667 (Dec. 14,

2016).  On December 15, 2016, former DHS Secretary Jeh Johnson signed and issued

Revision 8 to DHS Delegation No. 00106 that implemented Executive Order 13753.

Revision 8 contained two relevant provisions.  Section II.A provided for an order of

succession, stating "[i]n the case of the Secretary's death, resignation, or inability to

perform the functions of the Office, the orderly succession of officials is governed by

Executive Order 13753, amended on December 9, 2016."  Immigrant Legal Res. Ctr. v.

Wolf, — F. Supp. 3d —, 2020 WL 5798269, at *5 (N.D. Cal. Sept. 29, 2020).  Section II.B

authorized delegation of authority in certain situations: "I hereby delegate to the officials

occupying the identified positions in the order listed (Annex A), my authority to exercise

the powers and perform the functions and duties of my office, to the extent not otherwise

prohibited by law, in the event I am unavailable to act during a disaster or catastrophic

emergency."  Id.

At the time Secretary Johnson issued Revision 8 to Delegation No. 00106, the

FVRA provided the exclusive means to appoint an acting secretary.  See Opp. at 4 n.2;

see also 5 U.S.C. § 3347.  Under the FVRA, only the president had the authority to

United States District Court
Northern District of California

1  designate an order of succession.  See 5 U.S.C. § 3345(a)(2)–(3) ("[T]he President (and

2  only the President) may direct a person . . . .").  Thus, Executive Order 13753 codified the

3  President's designated order of succession and Delegation No. 00106 cross referenced

4  that order.  Further, the HSA provided that the Deputy Secretary of Homeland Security

5  would be the Secretary's first assistant for purposes of the FVRA and provided no

6  authority to the Secretary to designate an order of succession.  See 6 U.S.C.

7  § 113(a)(1)(A) (2012).

8        On December 23, 2016, Congress amended the HSA in two relevant ways.  See

9  National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 1903,

10  130 Stat. 2000, 2672 (2016).  First, the HSA established that the Under Secretary for

11  Management would "serve as the Acting Secretary if by reason of absence, disability or

12  vacancy in office, neither the Secretary nor the Deputy Secretary is available to exercise

13  the duties of the Office of Secretary."  6 U.S.C. § 113(g)(1).  Second, the Secretary has

14  the authority, notwithstanding the FVRA, "to designate such other officers of the

15  Department in further order of succession to serve as Acting Secretary."  6 U.S.C.

16  § 113(g)(2).  As both parties acknowledge, (FAC ¶ 148; Opp. at 4–5), Secretary Nielsen

17  could amend the order of succession; the question is whether she in fact did amend the

18  order of succession.

19        a.     Whether Secretary Nielsen Amended the Order of Succession

20        Similar to their motion to dismiss, defendants' opposition to the motion for

21  reconsideration asserts that, prior to her resignation in April 2019, Secretary Nielsen

22  issued an order of succession pursuant to her section 113(g)(2) authority that effectively

23  designated McAleenan as next in line to assume the role of acting secretary.  Opp. at 2.

24  Before addressing the parties' arguments on this issue, the court will detail the substance

25  of Secretary Nielsen's order.

26        On April 9, 2019, Secretary Nielsen signed a memorandum prepared by John M.

27  Mitnick, the DHS General Counsel, that acknowledged the Secretary's authority "set forth

28  in section 113 of title 6, United States Code" and summarized that Secretary Nielsen

7

"expressed [her] desire to designate certain officers of the Department of Homeland Security (DHS) in order of succession to serve as Acting Secretary." Dkt. 166-3 at 2.[2] The memo stated "[b]y approving the attached document, you will designate your desired order of succession for the Secretary of Homeland Security in accordance with your authority pursuant to Section 113(g)(2), of title 6, United States Code." Id. The attachment to the memorandum stated:

> By the authority vested in me as Secretary of Homeland Security, including the Homeland Security Act of 2002, 6 U.S.C. § 113(g)(2), I hereby designate the order of succession for the Secretary of Homeland Security as follows: Annex A of DHS Orders of Succession and Delegations of Authorities for Named Positions, Delegation No. 00106, is hereby amended by striking the text of such Annex in its entirety and inserting the following in lieu thereof:

Id. at 3. The attachment then describes the replacement text for Annex A: "Annex A. Order for Delegation of Authority by the Secretary of the Department of Homeland Security" and includes a list of eighteen positions. Id.

On April 10, 2020, DHS updated Delegation No. 00106 to reflect Secretary Nielsen's order. This update, Revision 8.5, did not change the text of section II.A (pertaining to order of succession) or section II.B (pertaining to delegation of authority). Revision 8.5 did, however, include the updated Annex A that was attached to Secretary Nielsen's April 9th order. See Dkt. 167-1 at 2, 6. When Secretary Nielsen resigned, the office of the Deputy Secretary was vacant, and the Under Secretary of Management resigned the same day as Nielsen. See Dkt. 183-3 at 8. At the time, McAleenan was serving in the Senate-confirmed role of CBP Commissioner and assumed the role of DHS Acting Secretary. According to Annex A of Revision 8.5 to Delegation No. 00106, the CBP Commissioner was third in line, but according to Executive Order 13753, the CBP Commissioner was seventh in line of succession. The divergence between Annex A's

---

[2] Pin citations to Secretary Nielsen's order, (Dkt. 166-3), Revision 8.5 to Delegation No. 00106, (Dkt. 167-1), the GAO Opinion, (Dkt. 183-3), and Acting Secretary Wolf's memo, (Dkt. 186), refer to the electronically stamped ECF page numbers at the top of each page.

United States District Court
Northern District of California

1   order and the order established by Executive Order 13753 is the focus of the parties'

2   arguments here.

3   Defendants urge the court to reconsider its prior determination that Secretary

4   Nielsen's order did not alter the order of succession.  Defendants' argument relies on the

5   distinction between the terms "order of succession" and "delegation of authority."

6   Defendants explain that section 113(g)(2) empowers the Secretary to designate an order

7   of succession, while section 112(b)(1) empowers the Secretary to delegate his or her

8   authority to other officials, even when the Secretary continues to occupy his or her office.

9   Opp. at 3.  According to defendants, Secretary Nielsen's April 9th order sets forth an

10  order of succession because the document only refers to amending DHS's "order of

11  succession," not a delegation of authority.  Id.  Defendants also rely on the fact that the

12  order references section 113(g)(2), which empowers the Secretary to designate an order

13  of succession, in three separate locations demonstrating that the April 9th order intended

14  to establish a new order of succession pursuant to section 113(g)(2).  Id. at 3–4.

15  Defendants also advance other arguments.  They assert that Annex A performed

16  two separate functions; it designated the order of succession and it amended the list of

17  officials for delegation of authority.  Id. at 4.  Next, they contend that Secretary Nielsen

18  "designate[d] the order of succession" and the use of the term "designation"—rather than

19  the term "delegation"—confirms that the amended Annex A was a designation of the

20  order of succession.  Id. at 5.  Finally, defendants argue that the court should defer to

21  DHS's interpretation of Secretary Nielsen's order.  Id. at 6.

22  In reply, plaintiffs first contend that defendants' opposition is essentially a motion

23  for reconsideration filed by defendants without requesting the court's permission to file

24  such a motion in violation of Civil Local Rule 7-9(a).  Reply at 4–5.  With respect to the

25  substance of defendants' opposition, plaintiffs argue that the plain text of Secretary

26  Nielsen's order only changed Annex A but did not amend the portion of Delegation No.

27  00106 providing for succession according to Executive Order 13753.  Id. at 7.  Plaintiffs

28  characterize defendants' argument as premised on disregarding the plain text of the

United States District Court
Northern District of California

1    order and relying instead on out-of-context prefatory language or surrounding

2    circumstances to divine what Secretary Nielsen intended.  Id. at 8.  They also cite two

3    district court opinions that have likewise determined that Secretary Nielsen did not alter

4    the order of succession.  Id. at 9–10.  Plaintiffs also point out that section 113(g)(2) does

5    not necessarily apply only in cases of succession due to vacancy and, when read with

6    section 113(g)(1), also applies to circumstances where the Secretary is not available to

7    exercise the duties of the office due to absence or disability.  Id. at 12.

8         The court rejects defendants' arguments for several reasons.  First, the court

9    agrees with plaintiffs that defendants' opposition is a de facto motion for reconsideration

10   for which defendants did not request the court's permission to file.  Moreover, defendants

11   are not relying on new evidence, arguing the court committed clear error, or that there

12   was a change in law to support their arguments; rather, they take issue with the court's

13   prior ruling, putting forward similar arguments as those previously advanced.  As a

14   general rule, a motion for reconsideration "may not be used to raise arguments or present

15   evidence for the first time when they could reasonably have been raised earlier in the

16   litigation."  Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)

17   (citing 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999)).  That rule

18   applies here as defendants' arguments could have been raised in their motion to dismiss.

19   Defendants' failure to request leave to file a motion for reconsideration, combined with

20   the fact that defendants have not presented a basis to grant such reconsideration, is

21   sufficient grounds to reject their arguments.  Given the importance of the issues and the

22   fact that the ultimate disposition of this motion does not prejudice plaintiffs, the court

23   briefly addresses the substance of defendants' arguments.

24        Second, as discussed in the court's prior order, the plain language of Nielsen's

25   order is clear and unambiguous.  As a general rule of interpretation, "[w]here the

26   language is plain and admits of no more than one meaning the duty of interpretation does

27   not arise, and the rules which are to aid doubtful meanings need no discussion."  Carson

28   Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 878 (9th Cir. 2001) (en banc) (quoting

United States District Court
Northern District of California

10

1   Caminetti v. United States, 242 U.S. 470, 485 (1917)); see also Safe Air for Everyone v.

2   U.S. EPA, 488 F.3d 1088, 1097 (9th Cir. 2007) (applying plain meaning rule to

3   regulations).[3]  Secretary Nielsen's order amended Annex A by stating, "I hereby

4   designate the order of succession for the Secretary of Homeland Security as follows:

5   Annex A of . . . Delegation No. 00106, is hereby amended by striking the text of such

6   Annex in its entirety and inserting the following in lieu thereof."  Dkt. 166-3 at 3 (emphasis

7   added).  The specific change made by the order was to strike the prior version Annex A

8   in its entirety and replace it with an amended Annex A.  The order did not amend the

9   circumstances that would trigger Annex A's application; that is, it did not modify section

10  II.A or II. B of Delegation No. 00106.  Revision 8.5 to Delegation No. 00106, released

11  after Secretary Nielsen's order, is persuasive contemporaneous evidence that the

12  replacement of Annex A was the only such change effectuated by the order.

13         In light of the plain meaning, defendants' arguments concerning the surrounding

14  references to order of succession are unpersuasive.  As a general principle, "prefatory

15  clauses or preambles cannot change the plain meaning of the operative clause."

16  Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969, 1978 (2016) (citing Yazoo &

17  Miss. Valley R. Co. v. Thomas, 132 U.S. 174, 188 (1889)).  As the district court in Casa

18  de Maryland recognized, the memo prepared by the DHS general counsel constitutes

19  such a prefatory clause or preamble and the memo does not detract from the operative

20  language that altered only Annex A.  See Casa de Md., 2020 WL 5500165, at *22.

21  Further, as noted in the prior order, the fact that on November 8, 2019, McAleenan

22  purported to revise Delegation No. 00106 by amending Section II.A to explicitly reference

23  Annex A in cases of resignation, instead of Executive Order 13753, confirms that

24  Nielsen's revision did not do so.  See Dkt. 177 at 25–26; see also Casa de Md., 2020 WL

25

26  ─────────────────

27  [3] The court notes that neither Secretary Nielsen's order nor Delegation No. 00106 are
    statutes or regulations.  Yet, as defendants pointed out in their reply in support of the
    motion to dismiss, it is appropriate to apply rules of statutory construction to
28  administrative orders delegating authority.  See Dkt. 172 at 14 & n.7 (citing Crowell v. IRS
    (In re Crowell), 258 B.R. 885, 889 (E.D. Tenn. 2001)).

United States District Court
Northern District of California

5500165, at *21 ("McAleenan next amended Delegation Order 00106 on November 8, 2019.  But unlike Nielsen's amendment, McAleenan actually changed the order of succession applicable in the event of vacancy . . . .").

Third, subsequent to this court's prior order, three district courts have examined this precise question and have also concluded that Secretary Nielsen's April 9th amendment only changed Annex A but did not amend the order of succession in cases of resignation.  See Batalla Vidal v. Wolf, — F. Supp. 3d —, 2020 WL 6695076, at *9 (E.D.N.Y. Nov. 14, 2020); Immigrant Legal Res. Ctr., 2020 WL 5798269, at *7–8; Casa de Md., 2020 WL 5500165, at *22–23.  On August 14, 2020, the GAO issued an opinion that examined whether Acting Secretary Wolf had validly assumed the title of Acting Secretary.  Dkt. 183-3 at 2.  As a necessary predicate to determining whether Wolf was validly appointed, the GAO examined whether McAleenan was validly appointed as Acting Secretary following the resignation of then Secretary Nielsen.  Similar to this court's prior order, the GAO concluded that Secretary Nielsen's April 9th order only amended Annex A but did not amend the order of succession established in Executive Order 13753.  Id. at 8.  These opinions are persuasive and support the court's interpretation.

Fourth, the court need not defer to defendants' interpretation of the April 9th order.  While courts have sometimes "deferred to 'official staff memoranda' that were 'published in the Federal Register[,]' . . . . [that] interpretation must at least emanate from those actors, using those vehicles, understood to make authoritative policy in the relevant context."  Kisor v. Wilkie, 139 S. Ct. 2400, 2416 (2019).  In this case, the court assumes the Secretary's order and the memo attached to the order are authoritative.  Yet, defendants are asking the court to defer to their interpretation of the order offered in the context of this litigation, not the Department's contemporaneous explanation.  See Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1909 (2020) ("The functional reasons for requiring contemporaneous explanations apply with equal force regardless whether post hoc justifications are raised in court by those appearing on

1   behalf of the agency or by agency officials themselves." (citations omitted)).  In other

2   words, DHS has not issued an interpretation of Secretary Nielsen's order, rather the

3   interpretation is a litigation position to which the court owes no deference.  See United

4   States v. Trident Seafoods Corp., 60 F.3d 556, 559 (9th Cir. 1995) ("No deference is

5   owed when an agency has not formulated an official interpretation of its regulation, but is

6   merely advancing a litigation position.").

7           Therefore, the court reaffirms its prior findings that former Secretary Nielsen's April

8   9th order did not alter the Department's order of succession in cases of resignation and

9   that Executive Order 13753 continued to govern the order of succession at the time of

10  Secretary Nielsen's resignation.

11          **b.      Whether McAleenan's Appointment Was Valid Under the FVRA**

12          Assuming Executive Order 13753 governed the order of succession, the court next

13  examines whether McAleenan validly assumed the role of Acting Secretary pursuant to

14  that executive order and the FVRA.  In its prior order, the court determined that, despite

15  the order of succession established in section (a) of Executive Order 13753, subsection

16  (b)(ii) reserved to the President the discretion to depart from subsection (a) as long as the

17  FVRA permitted McAleenan's appointment.  Dkt. 177 at 26.  Because plaintiffs did not

18  allege that McAleenan's appointment was invalid under the FVRA, they failed to state a

19  claim.  Id.  Plaintiffs move for reconsideration of this finding.

20          Plaintiffs contend that, subsequent to this court's finding, new evidence

21  demonstrates that defendants have taken the position that the President did not appoint

22  McAleenan as Acting Secretary pursuant to his FVRA authority.  Mtn. at 7.  According to

23  plaintiffs, the court's prior legal conclusion relied on a factual premise that defendant did

24  not advance before the court and have now admitted was incorrect.  Id.  For their part,

25  defendants state that plaintiffs are correct that the President did not appoint Secretary

26  McAleenan under the FVRA.  Opp. at 2.  They offer no further argument on this point.

27          As stated previously, President Obama issued Executive Order 13753 as an

28  advance exercise of his FVRA authority.  See Executive Order 13753 ("By the authority

13

1   vested in me as President by the Constitution and the laws of the United States of

2   America, including the Federal Vacancies Reform Act of 1998, 5 U.S.C. 3345 *et*

3   *seq.*, . . . .").  Section (a) establishes the President's designated order of succession and

4   subsection (b)(ii) reserves to the President discretion to depart from section (a) so long

5   as that departure meets the requirements of the FVRA.  The relevant inquiry here is

6   therefore whether the President exercised that discretion under section (b)(ii) because

7   there is no dispute that under the order of succession in section (a), there was one

8   individual ahead of McAleenan at the time of Secretary Nielsen's resignation.[4]

9          As described in plaintiffs' new evidence and in defendants' opposition to the

10  motion for reconsideration, defendants have repeatedly represented that McAleenan was

11  appointed pursuant to the HSA and not the FVRA.  See, e.g., Dkt. 183-2 at 40:5–9; Opp.

12  at 2 ("Plaintiffs are correct that the President did not designate Mr. McAleenan as Acting

13  Secretary under the [FVRA] . . . .").  Other opinions have arrived at a similar outcome,

14  though no opinion appears to have considered the implications of subsection (b)(ii).  For

15  example, the district court in Casa de Maryland determined that the order of succession

16  in section (a) of Executive Order 13753 dictated the order of succession.  See Casa de

17  Md., 2020 WL 5500165, at *18 ("McAleenan's leapfrogging over Director Krebs therefore

18  violated the agency's own order of succession.  From this record, the Court cannot help

19  but conclude that McAleenan assumed the role of Acting Secretary without lawful

20  authority.").  The GAO Report also applies section (a) without any discussion of the

21  President's reserved discretion in subsection (b)(ii).  See Dkt. 183-3 at 9 ("The first

22  previously confirmed official in the order of succession in E.O. 13753 was the Director of

23  CISA.  However, instead of following the order of succession in E.O. 13753, DHS applied

24  the one in Annex A." (footnote omitted)).

25

26  ─────────────────

27  [4] As the GAO Opinion states, Christopher Krebs was serving in the Senate-confirmed
    role of Director of the Cybersecurity and Infrastructure Security Agency, which was
    previously known as the Under Secretary for Protection and Programs.  Dkt. 183-3 at 7
28  n.8, 9 n.11.  The Under Secretary for Protection and Programs was fourth in the order of
    succession in Executive Order 13753.

*United States District Court*
*Northern District of California*

1     That said, it is not clear that the President failed to designate McAleenan as Acting

2   Secretary.  In the FAC, plaintiffs allege that on April 7, 2019, President Trump tweeted

3   that McAleenan would assume the role of Acting Secretary.  FAC ¶ 145.  Indeed, the

4   President sent two tweets on April 7, 2019, stating:

> Secretary of Homeland Security Kirstjen Nielsen will be leaving
> her position, and I would like to thank her for her service. . . . I
> am pleased to announce that Kevin McAleenan, the current
> U.S. Customs and Border Protection Commissioner, will
> become Acting Secretary for @DHS.gov.  I have confidence
> that Kevin will do a great job!

9   Donald J. Trump (@realDonaldTrump), Twitter (Apr. 7, 2019),

10   https://twitter.com/realDonaldTrump/status/1115011884154064896?s=20,

11   https://twitter.com/realDonaldTrump/status/1115011885303312386?s=20.[5]

12     Of course, these tweets lack the formality of an executive order, but in other

13   instances, courts have noted that the President's tweets are akin to official statements

14   and government speech.  See Knight First Amendment Inst. at Columbia Univ. v. Trump,

15   928 F.3d 226, 231 (2d Cir. 2019) ("The public presentation of the Account and the

16   webpage associated with it bear all the trappings of an official, state–run account. . . .

17   The President and multiple members of his administration have described his use of the

18   Account as official."); see also id. at 239 ("Everyone concedes that the President's initial

19   tweets (meaning those that he produces himself) are government speech.").

20     At the very least then, there appears to be a factual conflict whether the

21   President's tweets constituted a designation under section 3345(a)(2) or whether, as both

22   parties maintain, the President did not appoint Acting Secretary McAleenan under the

23   FVRA.  That factual conflict cannot be resolved on a Rule 12(b)(6) motion and therefore

24   necessitates reconsideration of the court's prior order granting defendants' motion to

25   dismiss the third, fifth, and eighth claims.  Further, if plaintiffs are correct that the

27   [5] The Ninth Circuit has recognized that the President's tweets are judicially noticeable
     pursuant to Federal Rule of Evidence 201 and, additionally, plaintiffs referred to the
28   tweets in their FAC.  See Hawaii v. Trump, 859 F.3d 741, 773 n.14 (9th Cir.), vacated
     and remanded on other grounds, 138 S. Ct. 377 (2017).

15

1   President did not designate McAleenan as Acting Secretary, then they state a claim that

2   McAleenan's appointment violated the FVRA, which again requires reconsideration of the

3   court's prior order.  Accordingly, the court will grant plaintiffs' motion for reconsideration.

4   One final matter bears mention.  On October 8, 2020, defendants filed a notice in

5   which they include a memorandum signed by Acting Secretary Wolf on October 7, 2020.

6   Dkt. 186.  Defendants then filed a second notice on November 23, 2020 that includes a

7   second memorandum signed by Acting Secretary Wolf on November 16, 2020.  Dkt. 187.

8   Both versions of the memo purport to affirm and ratify certain actions taken by former

9   Acting Secretary McAleenan, including the Rule.  The court does not consider the notices

10  or attached memoranda for two reasons.  First, Civil Local Rule 7-3(d) prohibits the filing

11  of "additional memoranda, papers or letters" once the reply brief is filed unless a party

12  receives the court's approval.  No such approval was sought here, and defendants' filings

13  violate the Civil Local Rules.  Second, whether Acting Secretary Wolf validly ratified the

14  Rule has no bearing on the narrow issue raised by plaintiffs' motion for reconsideration,

15  that is, whether their new evidence warrants reconsideration of the court's prior order

16  granting defendants' motion to dismiss.

17  ## CONCLUSION

18  For the foregoing reasons, plaintiffs' motion for reconsideration is GRANTED and

19  defendants' motion to dismiss plaintiffs' third, fifth, and eighth claims pertaining to

20  McAleenan's appointment as Acting Secretary of Homeland Security is now DENIED.

21  The court's prior order on the motion to dismiss will be amended accordingly.

22  **IT IS SO ORDERED.**

23  Dated: November 25, 2020

24  /s/ Phyllis J. Hamilton

25  PHYLLIS J. HAMILTON
    United States District Judge

26

27

28