Nicholas Espíritu (SBN 237665)
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Boulevard, #108-62
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911
espiritu@nilc.org

Antionette Dozier (SBN 244437)
WESTERN CENTER ON LAW & POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA 90010
Tel: (213) 487-7211
Fax: (213) 487-0242
adozier@wclp.org

Martha Jane Perkins (SBN 104784)
NATIONAL HEALTH LAW PROGRAM
200 N. Greensboro Street, Ste. D-13
Carrboro, NC 27510
Tel.: (919) 968-6308
Fax: (919) 968-8855
perkins@healthlaw.org

Laura D. Smolowe (SBN 263012)
Eric P. Tuttle (SBN 248440)
Anne K. Conley (SBN 307952)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Tel:     (213) 683-9100
Fax:     (213) 687-3702
Laura.Smolowe@mto.com
Eric.Tuttle@mto.com
Anne.Conley@mto.com

*Attorneys for Plaintiffs La Clínica de La Raza, et al.*
*See signature page for complete list of parties represented*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| LA CLÍNICA DE LA RAZA, et al., | Case No. 4:19-cv-04980-PJH |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| JOSEPH R. BIDEN, et al., | Courtroom:  3 |
| Defendants. | Judge:     Hon. Phyllis J. Hamilton<br>Trial Date: None Set<br>Date:      May 13, 2021<br>Time:      1:30 PM |

Case No. 4:19-cv-04980-PJH

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

**TO THE DEFENDANTS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 13, 2021, at 1:30 PM, or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court, located at 1301 Clay Street, Oakland, California, Plaintiffs La Clínica De La Raza; California Primary Care Association; Maternal and Child Health Access; Farmworker Justice; Council on American Islamic Relations-California; African Communities Together; Legal Aid Society of San Mateo County; Central American Resource Center; and Korean Resource Center, will and hereby do move under Federal Rule of Civil Procedure 56, Local Rules 7-2 and 56, and the Court's Order at ECF No. 197 for summary judgment on Plaintiffs' causes of action alleging that Mr. Kevin McAleenan was invalidly serving as Acting Secretary of the Department of Homeland Security and therefore lacked authority to issue the rule "Inadmissibility on Public Charge Grounds," 84 Fed. Reg. 41,292 (Aug. 14, 2019) ("the Rule" or "Public Charge Rule"), making the Rule void.

As the Court has already held, and as every other court to have considered the issue has agreed, Mr. McAleenan was not properly serving as Acting Secretary of the Department of Homeland Security following Secretary Nielsen's resignation; therefore, he had no authority to issue the Public Charge Rule, making it void. Defendants' subsequent attempts to ratify the Rule through Mr. Chad Wolf likewise were void because the Federal Vacancy Reform Act forbids ratification of actions taken in violation of its provisions. Even if the ratification were permitted, Mr. Wolf lacked authority to do so.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of Nicholas Espíritu and the Exhibits attached thereto, the parties' Joint Statement of Undisputed Facts, the pleadings and records in this action, and such further papers and arguments of counsel that the Court may consider.

Dated: March 8, 2021                                   Respectfully submitted,


                                                       */s/ Nicholas Espíritu*
                                                       Nicholas Espíritu
                                                       *Attorney for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

    A.    The Public Charge Rule ......................................................................... 2

    B.    Statutes and Regulations Governing DHS Order of Succession ............................ 2

    C.    Mr. McAleenan's Service ...................................................................... 4

    D.    Mr. Wolf's Service .............................................................................. 6

    E.    Mr. Gaynor's Service .......................................................................... 7

    F.    Change in Administration ...................................................................... 7

    G.    Procedural Background of this Case ........................................................ 7

III.   LEGAL STANDARD ........................................................................................ 9

IV.   ARGUMENT .................................................................................................. 10

    A.    McAleenan Did Not Lawfully Issue the Public Charge Rule Because He Was Never Properly Serving as DHS Acting Secretary ......................................... 10

    B.    The Public Charge Rule Has Not Been Validly Ratified ..................................... 12

        1.    The FVRA Prohibits Ratification of Actions Taken in Violation of Congress's Vacancies Framework in the FVRA ............................................ 12

        2.    Even if the FVRA's Prohibition on Ratification Does Not Apply, There Has Been No Effective Ratification of the Public Charge Rule ....... 19

            (a)    The First Two Ratifications Fail Because Mr. Gaynor Was Not Serving as Acting Secretary and Lacked Authority to Amend the Order of Succession ....................................................... 19

            (b)    The Third Ratification Also Fails Because Mr. Gaynor Could Not Circumvent the Appointments Clause and the FVRA by Delegating the Acting Secretary's Authority to Mr. Wolf ............. 22

            (c)    All Attempts at Ratification Were Contrary to Law under the APA, the FVRA, and the DHS Organic Statute .............................. 24

V.    CONCLUSION ................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988)..................................................................................11

*Batalla Vidal v. Wolf*,
    --- F. Supp. 3d ---, 2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020)............................. 10, passim

*Buell v. Simon Newman Co.*,
    61 F. Supp. 157 (N.D. Cal. 1945) ...........................................................................11

*Bullock v. U.S. Bureau of Land Mgmt.*,
    --- F. Supp. 3d ---, 2020 WL 5746836 (D. Mont. Sept. 25, 2020).....................................18, 23

*Cal. v. U.S. D.H.S.*,
    No. 19-17214 (9th Cir. Jan. 20, 2021) ......................................................................8

*Casa de Maryland, Inc. v. Wolf*,
    --- F. Supp. 3d ---, 2020 WL 5500165 (D. Md. Sept. 11, 2020) ...............................10

*Consumer Fin. Protection Bureau v. Gordon*,
    819 F.3d 1179 (9th Cir. 2016)................................................................................24

*E.E.O.C. v. Maricopa Cnty. Cmty. Coll. Dist.*,
    736 F.2d 510 (9th Cir. 1984)..................................................................................11

*Gradetech, Inc. v. Am. Emps. Grp.*,
    2006 WL 1806156 (N.D. Cal. June 29, 2006) ........................................................20

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    920 F.3d 1 (D.C. Cir. 2019) ...................................................................................24

*Immigrant Legal Res. Ctr. v. Wolf*,
    --- F. Supp. 3d ---, 2020 WL 5798269 (N.D. Cal. Sept. 29, 2020) ...........................10

*Intercollegiate Broadcasting Sys., Inc. v. Copyright Royalty Bd.*,
    796 F.3d 111 (D.C. Cir. 2015) ...........................................................................24, 25

*L.M.-M. v. Cuccinelli*,
    442 F. Supp. 3d 1 (D.D.C. 2020) ...............................................................16, 17, 18

*N.L.R.B. v. SW Gen., Inc.*,
    137 S. Ct. 929 (2017) ............................................................................................23

*Nextdoor.Com, Inc. v. Abhyanker*,
    2013 WL 3802526 (N.D. Cal. July 19, 2013) ........................................................20

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Nw. Immigrant Rights Project v. U.S.C.I.S.*,
--- F. Supp. 3d ---, 2020 WL 5995206 (D.D.C. Oct. 8, 2020) .................................... 10, passim

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
18 F.3d 1468 (9th Cir. 1994) ...................................................................................9

*Pangea Legal Servs. v. U.S. DHS*,
---F. Supp. 3d---, 2021 WL 75756 (N.D. Cal. Jan. 8, 2021) ......................................... 1, passim

*Selected Am. Shares v. United States*,
196 F.2d 473 (7th Cir. 1952) ...................................................................................11

*SW Gen., Inc. v. N.L.R.B.*,
796 F.3d 67 (D.C. Cir. 2015) ...........................................................................12, 23

*United States v. Bentson*,
947 F.2d 1353 (9th Cir. 1991) ................................................................................20

**FEDERAL STATUTES**

5 U.S.C. § 551 ................................................................................................................13

5 U.S.C. § 706 ................................................................................................10, 11, 25

5 U.S.C. § 3345 ......................................................................................................... 2, passim

5 U.S.C. § 3346 ...............................................................................................6, 13, 18, 23

5 U.S.C. § 3347 ......................................................................................................... 3, passim

5 U.S.C. § 3348 ......................................................................................................... 12, passim

6 U.S.C. § 112 ......................................................................................................... 2, passim

6 U.S.C. § 113 ......................................................................................................... 1, passim

6 U.S.C. § 271 ................................................................................................................17

8 U.S.C. § 1103 ..........................................................................................................2, 15

28 U.S.C. § 2201 ..............................................................................................................8

31 U.S.C. § 1342 ............................................................................................................22

Pub. L. No. 111-8 ...........................................................................................................22

Pub. L. No. 115-278 .........................................................................................................5

# TABLE OF AUTHORITIES
### (Continued)

**Page**

**FEDERAL RULES**

Fed. R. Civ. P. 56 ..........................................................................................................9, 11

**FEDERAL REGULATIONS**

81 Fed. Reg. 90,667 ........................................................................................................3, 5

84 Fed. Reg. 41,292 ..................................................................................................1, 2, 15

85 Fed. Reg. 65,653 .................................................................................................. 5, passim

85 Fed. Reg. 75,223 ..................................................................................6, 11, 19, 20

**CONSTITUTIONAL PROVISIONS**

U.S. Const. article II, § 2, cl. 2 ........................................................................1, 8, 22, 25

**LEGISLATIVE MATERIALS**

S. Rep. 105-250 ............................................................................................ 12, passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This Court, and every other court to consider the issue, has held that Kevin McAleenan did not validly serve as the Acting Secretary of the Department of Homeland Security ("DHS") pursuant to the order of succession adopted under the DHS organic statute, the Homeland Security Act ("HSA"), 6 U.S.C. § 113(g)(2).  *E.g.*, ECF No. 189, at 23-27; *see also Pangea Legal Servs. v. U.S. DHS*, ---F. Supp. 3d---, 2021 WL 75756, at *5 (N.D. Cal. Jan. 8, 2021) (collecting cases).  In the concurrently filed Joint Statement of Undisputed Facts, Defendants also have stipulated that Mr. McAleenan was not serving under the only other possible authority, the Federal Vacancy Reform Act ("FVRA").  Therefore, because Mr. McAleenan was not validly serving as the Acting Secretary of DHS when he issued the Public Charge Rule, *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292 (Aug. 14, 2019), the Rule must be vacated.

Through a series of acting officials, delegations, and ratifications, Defendants in this case have attempted to circumvent the Appointments Clause, which requires the President to obtain the advice and consent of the Senate to appoint officers for "PAS" positions subject to the Clause. *See* U.S. Const. art. II, § 2, cl. 2.  Congress adopted the FVRA to restore the constitutional balance of power contemplated by the Appointments Clause.  The FVRA allows the Executive to designate temporary "acting" officials to keep the federal bureaucracy working while permanent officials are selected through the constitutional process.  To make such a temporary appointment, the Executive must follow the rules set forth in the FVRA or (for certain agencies like DHS) rules set forth in the agency's organic statute.  If the Executive purports to appoint someone in violation of those rules, the FVRA declares that illegal officer's acts void.

In this case, after the Senate-confirmed DHS Secretary resigned in April 2019, Defendants failed to comply with the FVRA and the DHS organic statute in purporting to fill that office with Mr. McAleenan.  Mr. McAleenan was neither the next in line to serve as Acting Secretary under the DHS's order of succession nor was he designated as the acting officer by the President under the FVRA.  This means that actions taken by Mr. McAleenan as Acting Secretary, including the Public Charge Rule, are invalid.  After this Court and several others issued decisions noting the

1  problems with Mr. McAleenan's appointment, another DHS official, Chad Wolf, attempted to

2  ratify Mr. McAleenan's invalid acts.  But Mr. Wolf's three attempts at ratification all fail, both

3  because the FVRA forbids ratification of acts taken in violation of its provisions, 5 U.S.C.

4  § 3348(d), and because Mr. Wolf had no authority to issue or ratify agency rules.

5        The Public Charge Rule, as this Court and many others have recognized, causes harm to

6  communities, individuals, and organizations, including Plaintiffs.  *E.g.*, ECF No. 131, at 77-85.  It

7  is chilling access to health care and other public benefits during a global pandemic, when such

8  access is critical to combat the nation's health crisis.  Plaintiffs move for summary judgment to

9  obtain immediate relief from the Rule.  Because there are no material disputed facts with respect

10  to Plaintiffs' claims challenging the Rule based on Mr. McAleenan's invalid service and actions

11  under the FVRA, the DHS organic statute, and the Administrative Procedure Act ("APA"), and no

12  attempt at ratification was effective as a matter of law, the Court should grant Plaintiffs' summary

13  judgment on their third, fifth, and eighth claims and hold the Rule invalid and without legal effect.

14  **II.    BACKGROUND**

15        **A.    <u>The Public Charge Rule</u>**

16        On August 14, 2019, DHS published the Public Charge Rule in the Federal Register.  84

17  Fed. Reg. 41,292.  The Rule was issued pursuant to Mr. McAleenan's purported authority as DHS

18  Acting Secretary, *see id.* at 41,295-96, and under his signature, *id.* at 41,508.  The Rule invokes

19  the Secretary's statutorily established authority under, *inter alia*, 6 U.S.C. § 112 and 8 U.S.C.

20  § 1103, which "charge the Secretary with the administration and enforcement of the immigration

21  and naturalization laws of the United States" and "includ[e] the Secretary's authority to establish

22  regulations."  *Id.* at 41,295; *see also id.* at 41,296 ("The Secretary promulgates the changes in this

23  rule under all of these authorities.").

24        **B.    <u>Statutes and Regulations Governing DHS Order of Succession</u>**

25        The FVRA provides a general framework for what happens when a PAS officer "dies,

26  resigns, or is otherwise unable to perform the functions and duties of the office."  5 U.S.C. § 3345.

27  Section 3345 specifies that the "first assistant" to the office shall perform the duties of the office

28  temporarily in an acting capacity, but that "the President (and only the President) may direct"

1   certain other qualified officers or employees to perform the duties of the office temporarily in an

2   acting capacity.  *Id.* § 3345(a).  Apart from recess appointments, section 3347 of the FVRA

3   provides that the mechanisms in section 3345 are the exclusive means of temporarily authorizing

4   an acting official to perform the duties of a PAS office unless another statute expressly

5   (1) designates an officer or employee to serve in an acting capacity, or (2) authorizes the President,

6   a court, or the head of a department to designate an officer or employee to serve in an acting

7   capacity.  *Id.* § 3347(a).

8        On December 9, 2016, former President Obama issued Executive Order 13753, invoking

9   his authority under section 3345 of the FVRA to direct an order of succession for the DHS

10   Secretary in the event that the Secretary were to die, resign, or otherwise become unable to

11   perform the duties of the office.  *See Amending the Order of Succession in the Department of*

12   *Homeland Security*, 81 Fed. Reg. 90,667 (Dec. 9, 2016).  Executive Order 13753 specified the

13   following order of succession (limited to officers who would be eligible to serve as Acting

14   Secretary under the FVRA and were not serving their own office in an acting capacity):  the

15   Deputy Secretary, the Under Secretary for Management, the Administrator of the Federal

16   Emergency Management Agency ("FEMA"), the Under Secretary for National Protection and

17   Programs, the Under Secretary for Science and Technology, the Under Secretary for Intelligence

18   and Analysis, the Commissioner of U.S. Customs and Border Protection ("CBP"), and eleven

19   other officers.  *Id.*  Executive Order 13753 also reserved the President's authority, to the extent

20   permitted by the FVRA, to depart from this order of succession in designating an acting Secretary.

21   *Id.* at 90,668.

22        The DHS organic statute (set forth in the Homeland Security Act, 6 U.S.C. § 101 *et seq.*)

23   provides an alternative statutory basis for designating an acting DHS Secretary, as permitted by

24   section 3347 of the FVRA.  The DHS organic statute provides that the Deputy Secretary shall

25   serve as the Secretary's "first assistant" for purposes of the FVRA.  6 U.S.C. § 113(a)(1)(A).  It

26   also provides that, "[n]otwithstanding [the FVRA]," if neither the Secretary nor the Deputy

27   Secretary is available to exercise the duties of the Secretary's office (whether due to vacancy,

28   absence, disability, or otherwise), then the Under Secretary for Management shall serve as Acting

1   Secretary.  *Id.* § 113(g)(1).  The statute further provides that "the Secretary may designate such

2   other officers of the Department in further order of succession to serve as Acting Secretary,"

3   "[n]otwithstanding [the FVRA]."  6 U.S.C. § 113(g)(2).

4         The DHS order of succession is set forth in a document titled Delegation No. 00106.  *See,*

5   *e.g.*, Espíritu Decl., Ex. 1.  Former DHS Secretary Jeh Johnson issued a version of Delegation No.

6   00106 in December 2016.  *Id.*  It provided for two different orders of succession depending on the

7   reason for the Secretary's unavailability to exercise the duties of the office.  In case of the

8   Secretary's "death, resignation, or inability to perform the functions of the Office," Section II.A

9   directed that the order of succession would be governed by Executive Order 13753.  *Id.*  In the

10  event the Secretary was instead "unavailable to act during a disaster or catastrophic emergency,"

11  Section II.B directed that the officials occupying the positions listed in the order established in

12  "Annex A" would exercise the powers and perform the duties of the office of Secretary.  *Id.*

13        **C.      Mr. McAleenan's Service**

14        Former DHS Secretary Kirstjen Nielsen was confirmed by the Senate and took office in

15  December 2017.  *See* Espíritu Decl., Ex. 2.  Secretary Nielsen submitted her resignation on April

16  7, 2019, then announced she would remain until April 10, 2019.  *See id.* Exs. 2, 3, 4.

17        On April 9, 2019, the day before her resignation took effect, Secretary Nielsen made a

18  partial amendment to the DHS order of succession set forth in Delegation No. 00106.  *Id.* Ex. 5.

19  She signed a memorandum approving a document entitled "Amending the Order of Succession in

20  the Department of Homeland Security," which stated: "Annex A of DHS Orders of Succession

21  and Delegations of Authorities for Named Positions, Delegation No. 00106, is hereby amended by

22  striking the text of such Annex in its entirety and inserting the following in lieu thereof: …" *Id.*

23        On April 10, 2019, DHS issued a new revision of Delegation No. 00106 (revision number

24  8.5).  *Id.* Ex. 6.  Consistent with Secretary Nielsen's amendment, the new revision of Delegation

25  No. 00106 replaced the text of Annex A with the new text that Secretary Nielsen had approved,

26  but left untouched Sections II.A and II.B.  *Id.*  Those sections of Delegation No. 00106 continued

27  to provide that Executive Order 13753, which was unchanged, would govern the order of

28  succession in case of the Secretary's death or resignation, while Annex A would govern the order

1   of succession in case the Secretary were unable to act during a disaster.  *Id.*

2       When Secretary Nielsen resigned, pursuant to Section II.A of Delegation No. 00106, the

3   DHS Secretary's order of succession was determined by Executive Order 13753.  At that time, the

4   first three offices listed in Executive Order 13753—the Deputy Secretary, the Under Secretary for

5   Management, and the FEMA administrator—all were vacant.  *Id.* Exs. 7, 8.  The first position with

6   a qualified, Senate-confirmed officer was the fourth office listed, the Under Secretary of

7   Homeland Security for National Protection and Programs (renamed the Director of the

8   Cybersecurity and Infrastructure Security Agency, *see* Pub. L. No. 115-278), which was held by

9   Christopher Krebs.  *See* Espíritu Decl., Ex. 9.  Mr. McAleenan was then serving in the Senate-

10  confirmed role of CBP Commissioner, which was seventh in the line of succession under

11  Executive Order 13753, after Mr. Krebs.  *See* 81 Fed. Reg. 90,667; Espíritu Decl., Ex. 10.

12  Nevertheless, Mr. McAleenan purported to assume the office of Acting Secretary of DHS.

13  Espíritu Decl., Ex. 11.  Mr. McAleenan relied on the amended Annex A, which placed the CBP

14  Commissioner third in line (after the vacant offices of Deputy Secretary and Under Secretary for

15  Management) in cases where the Secretary was unavailable during a disaster or emergency.  But

16  because Secretary Nielsen resigned, Annex A did not apply; Executive Order 13753 did, and Mr.

17  McAleenan was not the next officer in line.

18      About seven months later, on November 8, 2019, Mr. McAleenan purported to amend

19  Delegation Order 00106.  *Id.* Ex. 12.  Unlike Secretary Nielsen, Mr. McAleenan amended Section

20  II.A of Delegation No. 00106 to provide that Annex A also would govern the order of succession

21  in case of the Secretary's death or resignation.  *Id.*  He also amended the order of succession in

22  Annex A, placing the Under Secretary for Strategy, Policy, and Plans fourth in line in the order of

23  succession.  *Id.*  Five days later, the Senate confirmed Mr. Chad Wolf as Under Secretary for

24  Strategy, Policy, and Plans.  *See id.* Ex. 13.  That same day, Mr. McAleenan resigned, and because

25  the first three offices listed in Annex A were vacant, *see id.* Ex. 14, Mr. Wolf purported to begin

26  serving as Acting Secretary of DHS under Mr. McAleenan's alleged amended order of succession.

27  *See* 85 Fed. Reg. at 65,654.

28

1          D.      **Mr. Wolf's Service**

2          While Mr. Wolf was purporting to serve as Acting Secretary of DHS following Mr.

3    McAleenan's resignation, former President Trump nominated Mr. Wolf to serve as the DHS

4    Secretary on September 10, 2020.  Espíritu Decl., Ex. 15.  That same day, and before the Wolf

5    nomination was submitted to the Senate, Mr. Peter Gaynor, then the Senate-confirmed

6    Administrator for FEMA, executed an order purporting to change the DHS order of succession yet

7    again.  *Id.* Exs. 16, 17, 18.  He did so "out of an abundance of caution" in light of an adverse

8    Government Accountability Office ("GAO") opinion, *see id.* Ex. 19, and several pending federal

9    court cases where courts had held Mr. McAleenan's and Mr. Wolf's services as Acting Secretary

10   invalid.  *See id.* Ex. 18.  Mr. Gaynor's order purported to place Mr. Wolf as Acting Secretary.  *Id.*

11         Following Mr. Gaynor's order, Mr. Wolf issued his own "out of an abundance of caution"

12   orders, purporting to rely upon Mr. Gaynor's order to "affirm[] and ratify[]" several actions,

13   including on October 7, 2020, when he claimed to ratify Mr. McAleenan's issuance of the Public

14   Charge Rule.  85 Fed. Reg. 65,653, at 65,654.  However, after DHS subsequently admitted in

15   litigation that Mr. Gaynor's September 10th order preceded Mr. Wolf's nomination, *see* Espíritu

16   Decl., Ex. 16,[1] Mr. Gaynor issued a second order on November 14, 2020, purporting to take the

17   exact same action under the same hypothetical authority as his first order.  *Id.* Ex. 20.  Mr. Wolf

18   then issued another ratification order on November 16, 2020, again purporting to ratify the Public

19   Charge Rule and a host of other actions.  85 Fed. Reg. 75,223.

20         Following continued litigation losses related to the validity of Mr. Wolf's service and

21   attempts at ratification, the White House submitted a second nomination of Mr. Wolf for DHS

22   Secretary on January 3, 2021 after the first nomination was returned.  *See* Espíritu Decl., Exs. 15,

23   21.  However, on January 6th, the nomination was withdrawn.  *Id.* Ex. 21.  On January 11, 2021,

24   Mr. Wolf issued a purported amendment to the DHS order of succession to place Mr. Gaynor next

25   in line as Acting Secretary.  *Id.* Ex. 22.  Mr. Wolf then resigned as Acting Secretary (but remained

26   Under Secretary for Strategy, Policy, and Plans).  *Id.* Ex. 23.

27   _____

28   [1] This fact was significant under the FVRA's time limits, which would have expired but would
     renew with the nomination of Mr. Wolf to the Secretary's role.  5 U.S.C. § 3346(a).

**E.     Mr. Gaynor's Service**

Following Mr. Wolf's resignation on January 11, 2021, Mr. Gaynor then purported to become Acting Secretary of DHS.  *Id.* Ex. 24.  On January 12, 2021, Mr. Gaynor issued an order purporting to delegate power "to ratify any prior regulatory actions" of DHS to Mr. Wolf *personally*:

> By virtue of the authority vested in the Secretary of Homeland Security by law, including the Homeland Security Act of 2002, *I hereby delegate to Chad F. Wolf, the Under Secretary for Strategy, Policy, and Plans*, the authority of the Secretary:
>
> A. To review, approve or disapprove, and sign any regulatory action, including proposed rules, final rules, and significant notices, and to ratify any prior regulatory actions of the Department of Homeland Security.
> B. To approve waivers of laws, regulations, and other legal requirements to ensure expeditious construction of border barriers and roads.
> C. To establish and issue written documents, including but not limited to guidance documents, bulletins, and manuals, furthering policy goals.
>
> *This delegation will remain in effect so long as Mr. Wolf is the Under Secretary for Strategy, Policy, and Plans*, or until the earlier to occur of (1) the appointment of a Senate-confirmed Secretary for the Department of Homeland Security by the President of the United States; or (2) the express revocation of this delegation.

*Id.* Ex. 25 (DHS Delegation 23028 (emphases added)).

Following this purported personal delegation of ratification authority, Mr. Wolf issued on January 14, 2021, a third purported ratification of the Public Charge Rule.  *Id.* Ex. 26.

**F.     Change in Administration**

On January 20, 2021, President Joseph R. Biden was inaugurated.  He nominated Alejandro Mayorkas as Secretary of DHS, and the Senate confirmed Mr. Mayorkas on February 2, 2021.  *Id.* Ex. 27.  That same day, the Biden Administration issued an Executive Order calling for the review of various immigration policies from the Trump Administration, including the Public Charge Rule.  *Id.* Ex. 28.

**G.     Procedural Background of this Case**

Plaintiffs' complaint raises several challenges to the Public Charge Rule under the APA and Equal Protection clause of the Constitution, as well as claims that the Rule was issued in

violation of Congress's vacancy scheme.[2]  ECF No. 161, First Amended Compl. ("FAC").
Specifically, Plaintiffs' third cause of action alleges that the Rule is arbitrary and capricious and
contrary to law because Mr. McAleenan was not properly serving as Acting Secretary when he
issued the Rule, in violation of DHS's organic statute and the APA.  FAC ¶ 203.  Plaintiffs' fifth
cause of action seeks the same result under the FVRA.  *Id.* ¶¶ 211-13.  And Plaintiffs' eighth cause
of action seeks relief under the Declaratory Judgment Act for the violation of the Appointments
Clause, the FVRA, and DHS's organic statute by Mr. McAleenan's improper service, including
his issuance of the Public Charge Rule.  *Id.* ¶ 230.

On August 7, 2020, the Court issued an order granting Defendants' motion to dismiss
Plaintiffs' third, fifth, and eighth causes of action.  ECF No. 177.  The Court agreed with Plaintiffs
that at the time of Secretary Nielsen's resignation, Executive Order 13753 governed the order of
succession and that Mr. McAleenan could not have ascended to the position of Acting Secretary
under that order of succession.  *Id.*  The Court noted, however, that section (b)(ii) of Executive
Order 13753 retained the President's authority under the FVRA to appoint someone else qualified
under the FVRA to the role of Acting Secretary.  *Id.*  Thus, the Court held, President Trump may
still have had authority under the FVRA and Executive Order 13753 to appoint Mr. McAleenan to
the position, regardless of the DHS order of succession, so long as Mr. McAleenan qualified under
section 3345 of the FVRA.  *Id.*  And because Plaintiffs did not allege that Mr. McAleenan failed to
meet those qualification requirements, the Court granted the motion to dismiss.  *Id.*

Plaintiffs then sought reconsideration on the ground that, *inter alia*, Defendants had
admitted in other proceedings that President Trump did not designate Mr. McAleenan as Acting
Secretary under the FVRA, and thus the Court's dismissal order was premised on a mistake of
fact.  ECF No. 183.  In opposition to Plaintiffs' motion, Defendants conceded that key fact:
"Plaintiffs are correct that the President did not designate Mr. McAleenan as Acting Secretary
under the Federal Vacancies Reform Act."  ECF No. 184, at 1.  On November 25, 2020, the Court

---

[2] The Court held that the Rule is likely unlawful under the APA in a prior preliminary injunction
order.  ECF No. 131.  That injunction has been stayed pending Supreme Court review of other
cases challenging this Rule under the APA.  *See Cal. v. U.S. D.H.S.*, No. 19-17214, ECF No. 162
(9th Cir. Jan. 20, 2021).

granted Plaintiffs' motion for reconsideration and issued an amended Order denying Defendants'

motion to dismiss Plaintiffs' third, fifth, and eighth causes of action.  ECF Nos. 188, 189.  The

Court once again rejected Defendants' arguments that Secretary Nielsen altered the DHS order of

succession to make Mr. McAleenan next in line upon her resignation, ruling that Executive Order

13753 continued to govern the order of succession at the time of Secretary Nielsen's resignation.

ECF No. 188, at 7-13; ECF No. 189, at 24-26.  The Court also acknowledged Defendants'

repeated concession that President Trump did not appoint Secretary McAleenan under the FVRA,

and decisions by other courts and the GAO reaching the same conclusion.  ECF No. 188, at 4, 13-

14; ECF No. 189, at 26.  The Court noted that President Trump had tweeted on April 7, 2020, that

Mr. McAleenan would become Acting Secretary, and held that there was an open factual question

as to whether the President's tweet constituted a designation under the FVRA "or whether, as both

parties maintain, the President did not appoint Acting Secretary McAleenan under the FVRA."

ECF No. 188, at 15; ECF No. 189, at 26 n.6.  Because that factual question was not suitable for

resolution on a motion to dismiss, ECF No. 189, at 26-27, and because "if plaintiffs are correct

that the President did not designate McAleenan as Acting Secretary, then they state a claim that

McAleenan's appointment violated the FVRA," ECF No. 188, at 15-16, the Court granted the

motion for reconsideration and denied the motion to dismiss.

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir.

1994) (summary judgment appropriate for challenges to agency action).  Under the FVRA, "[a]n

action taken by any person who is not acting under" the relevant laws governing vacant offices "in

the performance of any function or duty of a vacant office to which" the FVRA's sections "apply

shall have no force or effect" and such action "may not be ratified."  5 U.S.C. § 3348(d)(1), (2).

The APA also mandates that the Court "shall … hold unlawful and set aside agency action" that is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary

to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction,

1   authority, or limitations, or short of statutory right." *Id.* § 706(2)(A), (B), (C).

2   **IV.    ARGUMENT**

3        As this Court previously held, consistent with every other court to consider the question,

4   Mr. McAleenan never properly served as the Acting Secretary of DHS under the DHS organic

5   statute.  Defendants have stipulated and judicially admitted that Mr. McAleenan was not

6   purporting to serve under a designation from former President Trump pursuant to the FVRA.

7   Therefore, section A below explains that Mr. McAleenan's issuance of the Public Charge Rule

8   was *ultra vires* and without effect.  Section B explains how subsequent attempts by Mr. Wolf to

9   ratify the Rule also had no legal effect.  First, the FVRA prohibits ratification of actions taken by

10  invalidly serving acting officials like Mr. McAleenan.  Second, even assuming *arguendo* that the

11  FVRA's absolute bar on ratification does not apply, no permissible ratification occurred here,

12  because Mr. Wolf could not exercise the authority of the DHS Secretary under the FVRA, DHS's

13  organic statute, and the APA.

14        **A.    McAleenan Did Not Lawfully Issue the Public Charge Rule Because He Was
               Never Properly Serving as DHS Acting Secretary**

15

16        This Court has already held in three separate orders that following Secretary Nielsen's

17  resignation, Mr. McAleenan did not ascend to the role of DHS Acting Secretary under DHS's

18  order of succession.[3]  ECF Nos. 177, 188, 189.  This is consistent with the holding of every other

19  court to consider the issue.  *E.g.*, *Pangea*, 2021 WL 75756, at *5; *Batalla Vidal v. Wolf*, --- F.

20  Supp. 3d ---, 2020 WL 6695076, at *8 (E.D.N.Y. Nov. 14, 2020); *Nw. Immigrant Rights Project v.

21  U.S.C.I.S.*, --- F. Supp. 3d ---, 2020 WL 5995206, at *14 (D.D.C. Oct. 8, 2020); *Immigrant Legal

22  Res. Ctr. v. Wolf*, --- F. Supp. 3d ---, 2020 WL 5798269, at *7 (N.D. Cal. Sept. 29, 2020); *Casa de

23  Maryland, Inc. v. Wolf*, --- F. Supp. 3d ---, 2020 WL 5500165, at *21-23 (D. Md. Sept. 11, 2020).

24  The GAO reached the same conclusion.  Espíritu Decl., Ex. 19.  There is no reason—legal or

25  factual—for the Court to depart from its prior reasoning, echoed by all of these other authorities.

26        In its prior Orders, this Court left open the possibility that Mr. McAleenan had instead

27

28  _____
    [3] The Court also already rejected Defendants' improper attempt to seek reconsideration of the
    Court's decision.  ECF No. 188, at 10-13.

been serving as Acting DHS Secretary pursuant to the FVRA by former President Trump's tweet, thereby requiring a different analysis to determine if his service was improper. *See* ECF No. 177, at 26; ECF No.188, at 15-16; ECF No. 189, at 26-27. Defendants have, however, stated multiple times in multiple places that as a matter of fact, Mr. McAleenan was not serving under any designation by the President pursuant to the FVRA.[4] In the parties' Joint Statement of Undisputed Facts filed concurrently with this motion, Defendants have stipulated and agreed that "the following material facts may be taken as established:" "Former President Donald J. Trump did not designate Mr. Kevin McAleenan as Acting Secretary of the Department of Homeland Security under the Federal Vacancies Reform Act, including by the former President's tweets on Twitter on April 7, 2019." Stipulated facts are sufficient to establish undisputed material facts for purposes of summary judgment. *E.g.*, Fed. R. Civ. P. 56(c)(1)(A) (parties may support assertion that fact is not genuinely disputed by citing to stipulations); *see also E.E.O.C. v. Maricopa Cnty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984); *Selected Am. Shares v. United States*, 196 F.2d 473, 473 (7th Cir. 1952); *Buell v. Simon Newman Co.*, 61 F. Supp. 157, 160 (N.D. Cal. 1945). The Court should accept as a matter of undisputed fact the parties' stipulation that Mr. McAleenan was not designated by the President under the FVRA.

Because Mr. McAleenan was not serving under a designation by the former President pursuant to the FVRA, and because Secretary Nielsen did not modify the order of succession governing resignations to place Mr. McAleenan as her successor, Mr. McAleenan's service was unlawful and his actions as Acting Secretary, including the issuance of the Public Charge Rule, were *ultra vires* and invalid under the FVRA and the APA. *See* 5 U.S.C. § 706(2)(A), (B), (C); *id.* § 3348(d).

---

[4] For instance, the Submission Under the Federal Vacancies Reform Act submitted by Defendants to Congress to provide notice of Mr. McAleenan's service provided as an "Authority for Acting Designation if Other Than Vacancies Act" the DHS organic statute, "6 U.S.C. § 113(g)(2)." Espíritu Decl., Ex. 11. Mr. Wolf also so stated in his memoranda attempting to ratify actions of Mr. McAleenan. 85 Fed. Reg. 65,653; 85 Fed. Reg. 75,223; Espíritu Decl., Ex. 26. And Defendants have previously stated that Mr. McAleenan was serving only under the DHS organic statute in this case and in many other cases. *E.g.*, ECF No. 184, at 2; ECF No. 166, at 18; ECF No. 172, at 13-15; Espíritu Decl., Ex. 29, at 40:5-9. These statements can be taken as binding judicial admissions. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

**B.** **The Public Charge Rule Has Not Been Validly Ratified**

After Mr. McAleenan's resignation, Mr. Wolf purported to serve as Acting Secretary pursuant to DHS's order of succession (as allegedly amended by Mr. McAleenan) and to ratify actions taken by Mr. McAleenan, including the Public Charge Rule. These ratifications are without any legal effect for two reasons. First, the FVRA plainly states that an action taken in violation of its requirements—including DHS's order of succession validly adopted under FVRA section 3347—"has no force or effect" and "may not be ratified." 5 U.S.C. § 3348(d)(1), (2). Second, even if the Court were to find that the FVRA's prohibition on ratification was inapplicable in this case, Mr. Wolf lacked authority to ratify the Public Charge Rule. Put simply, Defendants' conduct was an attempted end run around the FVRA, and it was invalid and contrary to law under the APA.

**1.** **The FVRA Prohibits Ratification of Actions Taken in Violation of Congress's Vacancies Framework in the FVRA**

Mr. McAleenan was not properly serving as Acting Secretary, and therefore, under the FVRA, the actions he took are invalid and cannot be later ratified. In enacting the FVRA, Congress deliberately sought to overrule a line of court decisions that allowed actions taken by illegally serving officials to be ratified by subsequent office holders. *See SW Gen., Inc. v. N.L.R.B.*, 796 F.3d 67, 78 (D.C. Cir. 2015). As Congress noted, such "ratification" allowed officers to serve illegally with "no consequence," thereby "undermin[ing] the constitutional requirement of advice and consent." S. Rep. 105-250, at 8. Congress's solution was to "render[] actions taken by persons serving in violation of the Act void ab initio." *SW General, Inc.*, 796 F.3d at 71, 76. Specifically, FVRA section 3348 provides in relevant part:

> (d)(1) *An action taken by any person who is not acting under section 3345, 3346, or 3347*, or as provided by subsection (b), *in the performance of any function or duty of a vacant office* to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply *shall have no force or effect*.
> (2) An action that has no force or effect under paragraph (1) *may not be ratified*.

5 U.S.C. § 3348(d)(1), (2) (emphases added). These statutory requirements are broken into five subparts below:

***(1) Action.***   The Public Charge Rule is an "action" under section 3348, which incorporates the definition from 5 U.S.C. § 551(13) and includes issuing a rule.  *Id.* § 3348(a)(1) ("[T]he term 'action' includes any agency action as defined under section 551(13)."); *id.* § 551(13) ("'[A]gency action' includes the whole or a part of an agency rule ….").

***(2) Not Acting Under Sections 3345–3347.***   Mr. McAleenan took the "action" of issuing the Public Charge Rule, and he was "not acting under section 3345, 3346, or 3347." *Id.* § 3348(d)(1).  As discussed above, Defendants concede that Mr. McAleenan was not designated by the President under FVRA section 3345 and subject to the time limitations in section 3346. Section A above also explained how this Court and every other court to evaluate Mr. McAleenan's service has held it invalid under the DHS organic statute, which means that Mr. McAleenan was not validly acting under FVRA section 3347 either.  Section 3347(a)(1) provides an alternate method to the otherwise "exclusive means" in sections 3345 and 3346 for temporarily authorizing an acting official.  *Id.* § 3347(a).  Section 3347(a)(1) allows for the designation of an acting official where:

> a statutory provision expressly --
> (A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
> (B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity[.]

*Id.* § 3347(a)(1).  In the DHS organic statute, Congress has expressly designated the Deputy Secretary and the Under Secretary for Management to perform the duties of the Secretary should that office be vacant, 6 U.S.C. § 113(a)(1)(A), (g)(1), *and* Congress has expressly authorized the Secretary to "designate such other officers of the Department in further order of succession to serve as Acting Secretary," *id.* § 113(g)(2).  These provisions of the DHS organic statute fall squarely within section 3347(a)(1) of the FVRA.  *See Nw. Immigrant Rights Project*, 2020 WL 5995206, at *18 (HSA's provisions "fit[] into" FVRA § 3347(a)(1)).  But, as this Court has already ruled, Mr. McAleenan was not the officer designated by the DHS statute or the Secretary's further order of succession thereunder.  Thus, Mr. McAleenan was "not acting under section 3345, 3346, or 3347."  5 U.S.C. § 3348(d)(1); *see also Nw. Immigrant Rights Project*,  2020 WL

5995206, at *15, *18 ("There is no doubt that the FVRA applies to the Office of the Secretary, and thus its provision giving 'no force or effect' to the actions of acting officials serving unlawfully applies to McAleenan and Wolf"; noting relationship of FVRA section 3347(a)(1) to HSA's designation of alternate orders of succession).

Section 3348's reference to section 3347 makes clear that the remedies of section 3348 apply even in cases where the vacancy was purported to be filled under an agency organic statute as section 3347 allows.  The court in *Batalla Vidal* misinterpreted the DHS organic statute in holding that section 3348 did not apply to illegally-serving acting Secretaries of DHS.  That court relied on language allowing the DHS Secretary to designate a further order of succession "[n]otwithstanding" the FVRA.  6 U.S.C. § 113(g)(2); *Batalla Vidal*, 2020 WL 6695076, at *7. But that "notwithstanding" clause simply makes clear that the DHS organic statute is one of the exceptions to section 3345's exclusivity that section 3347 allows.  *See Nw. Immigrant Rights Project*, 2020 WL 5995206, at *18 ("It is thus clear that Congress wrote the HSA to operate alongside the FVRA, but the 'notwithstanding' clauses make equally clear that the HSA establishes an exception to the FVRA framework."); *see also id* at *14 n.1 ("Gaynor as Acting Secretary made his purported designation under a different (*and non-exclusive*) legal regime, one that vests the Secretary with discretion to designate a line of succession '[n]otwithstanding' the FVRA." (emphasis added)).  Nothing in this statutory language purports to displace the FVRA altogether, or to override the remedies provision that was a primary motivation of Congress in passing the FVRA.  *See* S. Rep. 105-250, at 8, 18-19.  Indeed, the DHS organic statute expressly incorporates the FVRA, providing who shall be "first assistant" to the DHS Secretary and Deputy Secretary "for purposes of" the FVRA.  6 U.S.C. § 113(a)(1)(A), (F).  If Congress had truly intended to vitiate the entire FVRA framework for DHS and impose the DHS organic statute as an exclusive regime, it would not make sense to designate officials "for purposes of" the FVRA.  But doing so is entirely consistent with the FVRA's sections 3347 and 3348.

***(3) Vacant Office to Which the FVRA Applies.***  The DHS Secretary's office was vacant following Secretary Nielsen's resignation, and that office is subject to the FVRA because it is a position that is appointed by the President "with the advice and consent of the Senate."  6 U.S.C.

§ 112(a)(1); *see also* 5 U.S.C. §§ 3345-3348.

**(4) *Performance of a Function or Duty.*** Mr. McAleenan issued the Rule "in the performance of [a] function or duty" of the vacant office. 5 U.S.C. § 3348(d)(1). The FVRA defines "the term 'function or duty'" as "any function or duty of the applicable office that":

> (A)(i) is established by statute; and
> (ii) is required by statute to be performed by the applicable officer (and only that officer); or
> (B)(i)(I) is established by regulation; and
> (II) is required by such regulation to be performed by the applicable officer (and only that officer); and
> (ii) includes a function or duty to which clause (i)(I) and (II) applies, and the applicable regulation is in effect at any time during the 180-day period preceding the date on which the vacancy occurs.

*Id.* § 3348(a)(2). Mr. McAleenan set forth in the Public Charge Rule the statutory bases under which he was purporting to act as Acting Secretary, including, *inter alia*, 6 U.S.C. § 112 and 8 U.S.C. § 1103, which "charge the Secretary with the administration and enforcement of the immigration and naturalization laws" and provide "the Secretary's authority to establish regulations." 84 Fed. Reg. at 41,295-96 (listing statutory authorities and stating that "[t]he Secretary promulgates the changes in this rule under all of these authorities"). All of these statutes vest functions and duties with the Secretary; they do not provide any other actor with the function or duty to take the action. For instance, 6 U.S.C. § 112(e) vests the function of "[t]he issuance of regulations" in "the Secretary" and the Secretary alone; the statute is silent as to any other officer. Likewise, 8 U.S.C. § 1103(a)(3) provides that the "Secretary of Homeland Security" "shall establish such regulations … as he deems necessary for carrying out his authority under the provisions of this chapter." Again, the statute vests the duty and function in only the Secretary. Thus, under section 3348(a)(2)(A), Mr. McAleenan issued the Rule in the performance of a function or duty of the Secretary's office.

Defendants have argued in other cases that an Acting DHS Secretary such as Mr. McAleenan does not actually perform a "function or duty" under the statute's definition when issuing regulations. The DHS organic statute also authorizes the Secretary to "delegate any of the Secretary's functions to any officer, employee, or organizational unit of the Department," 6 U.S.C.

1    § 112(b)(1), and in 2003, the DHS Secretary apparently delegated by regulation to the Deputy

2    Secretary the ability to "[a]ct[] for the Secretary to sign, approve, or disapprove any proposed or

3    final rule, regulation or related document," Espíritu Decl., Ex. 30; *see also Nw. Immigrant Rights*

4    *Project*, 2020 WL 5995206, at *16.  According to Defendants, the Secretary's power to delegate

5    all of their functions to another officer means that the Secretary's function of issuing regulations is

6    not vested exclusively in the Secretary and thus is not a "function or duty" of the DHS Secretary

7    under section 3348.  This argument is inconsistent with both the text and purpose of the FVRA.

8         It is inconsistent with the text of the FVRA because it conflates the two parts of the

9    definition of "function or duty":  part (A), governing duties "established by *statute*," and part (B),

10   governing duties "established by *regulation*."  5 U.S.C. § 3348(a)(2) (emphases added).  Only part

11   (A) applies in this case, because the only purported basis for Mr. McAleenan's issuance of the

12   Rule was the Secretary's *statutory* power.  No *statute* assigns the power to issue the Public Charge

13   Rule to any other officer; the statutes assign that power exclusively to the Secretary.  Whether a

14   *regulation* adopted by the Secretary purports to delegate that authority to another officer is

15   irrelevant to part (A) of the definition of "function or duty."  Part (B) of the definition is

16   inapplicable in this case because no regulation "establish[es]" the Secretary's power to issue the

17   Public Charge Rule.  Even if a regulation delegates the Secretary's statutory authority to the

18   Deputy Secretary, the *Secretary's* authority remains established by the statute.  Had someone

19   purporting to be the Deputy Secretary attempted to issue the Public Charge Rule, then it might be

20   proper to look to part (B) of the definition in section 3348 and ask whether a valid regulation

21   established the Deputy Secretary's power to issue such rules (e.g., the 2003 delegation).  But that

22   is not what happened here.

23        Moreover, Defendants' argument would vitiate the FVRA's "no ratification" remedy.  As

24   the same court that decided *Northwest Immigrant Rights Project* previously held, "the logic of this

25   position would cover all (or almost all) departments subject to the FVRA," and thus exempt all or

26   almost all department heads from the FVRA's enforcement mechanism, because all or almost all

27   agencies have "similar vesting and delegation statutes."  *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1,

28

31 (D.D.C. 2020).  That would undermine the very purpose for which the FVRA was passed in the first place.  *See* S. Rep. 105-250, at 5, 7-8.

In *L.M.-M.*, the court was faced with the argument that a statutory grant of a function or duty to the USCIS Director's office under 6 U.S.C. § 271 was not a "function or duty" of that office under FVRA section 3348 because "the Department's organic statute vests '[a]ll functions of all officers, employees, and organizational units of the Department' in the Secretary, 6 U.S.C. § 112(a)(3)."  442 F. Supp. 3d at 31.  Thus, the argument in the *L.M.-M.* case was that a competing *statutory* provision provided the power to the Secretary to exercise the powers of inferior officers.  But essentially "[e]very cabinet-level department has some version of [the Department's] vesting and delegation statutes," so the court took a practical interpretation of the statute in order to effectuate Congress's intent, finding that section 3348 applies when "the statute or regulation at issue provide that the function or duty at issue is assigned to one particular office," even if there was also a general vesting and delegation statute for the head of the agency.  *Id.*  After all, "[i]t was the pervasive use of those vesting-and-delegation statutes, along with 'the lack of an effective enforcement process,' that convinced Congress of the need to enact the FVRA."  *Id.* at 34 (citing S. Rep. 105-250, at 7).

Although this case has some factual distinctions from *L.M.-M.*—at issue here is the function and duty of the Secretary, not an inferior officer, and Defendants have not pointed to another statutory provision that actually vests the same authority of the Secretary in another officer—the same practical problem identified in *L.M.-M.* applies here.  The organic statutes of all (or almost all) agencies give the heads of those agencies the same kind of delegation power that the DHS Secretary has.  *Id.* at 31 & n.11.  If that were enough to escape the definition of "function or duty," then that would mean essentially *no* agency head in the United States government has any "function or duty" under the FVRA.  And it would mean that the remedies provision in section 3348, which bars ratification, could never apply to improperly serving agency heads.  That runs completely contrary to the purposes of the FVRA, which was to stop the abuse of vesting and delegation statutes in circumvention of the Senate's advice and consent role by "ensur[ing] an effective enforcement mechanism."  S. Rep. 105-250, at 5, 11-12, 17-18 (noting "the Justice

Department maintains that it is exempt [from] the [prior] Vacancies Act" and that "[i]ts contentions are broadly applicable to virtually all other departments given the broad language of vesting and delegation contained in those departments' organic statutes"); *id.* at 8 ("[I]f any subsequent acting official or anyone else can ratify the actions of a person who served beyond the length of time provided by the Vacancies Act, then no consequence will derive from an illegal acting designation.  This result also undermines the constitutional requirement of advice and consent.").

As the court in *L.M.-M.* recognized, the definition of "function or duty"—and particularly the requirement that a duty established by statute "is required by statute to be performed by the applicable officer (and only that officer)"—must be given a practical construction.  Defendants' argument, which would entirely exempt all or virtually all agency heads, is certainly not such a construction.  Even if the Secretary's delegation power and 2003 delegation to the Deputy Secretary were relevant—which Plaintiffs do not concede, as discussed above—the fact is that on August 14, 2019, when Mr. McAleenan purported to issue the Public Charge Rule, there was no Deputy Secretary.  That office was vacant, and it was required by the FVRA to remain vacant.  The last confirmed Deputy Secretary, Elaine Duke, resigned on April 15, 2018.  Espíritu Decl., Exs. 31, 32.  Former President Trump did not nominate anyone to that office, *see id.* Exs. 33, 34, so the FVRA time limits for any acting service expired 210 days after the vacancy, on November 11, 2018—long before the issuance of the Public Charge Rule on August 14, 2019.[5]  *See* 5 U.S.C.

---

[5] Following former Deputy Secretary Duke's retirement, Under Secretary of Management Claire Grady served as Acting Deputy Secretary.  Espíritu Decl., Ex. 32.  After the FVRA's time period expired, DHS reflected that the office of Deputy Secretary was "vacant" as required under the FVRA, but rather than nominate a Deputy Secretary (which would have re-started the FVRA time limit for acting service under section 3346), DHS designated Ms. Grady and then (following Ms. Grady's resignation) Mr. Pekoske as the "Senior Official Performing the Duties of the Deputy Secretary" to circumvent the statutory limit on temporary acting service.  *See id.* Exs. 35, 36.  There is no reference to a "Senior Official Performing the Duties of the Deputy Secretary" in the FVRA, DHS's organic statute, or the 2003 Delegation of authority to the Deputy Secretary.  Courts have rejected the Trump Administration's attempt to use such "Senior Officials" rather than valid acting officers to circumvent the FVRA's limits.  *See Bullock v. U.S. Bureau of Land Mgmt.*, --- F. Supp. 3d ---, 2020 WL 5746836, at *8-11 (D. Mont. Sept. 25, 2020) (attempt to avoid FVRA consequences on acting officials' service through use of "official performing the Director's duties under the Secretary's delegation" was without legal basis and effect).  Thus, Mr. Pekoske's "Senior Official" role when the Public Charge Rule was issued has no consequence under the FVRA, the DHS organic statute, or the 2003 Delegation.

§ 3346(a).  Accordingly, the FVRA required that office to "remain vacant" at the time the Public Charge Rule issued and specified that "only the head" of DHS could perform any functions or duties of the Deputy Secretary.  *Id.* § 3348(b)(1), (2).  Thus, the only office that by statute could lawfully "perform [the] function or duty" of issuing the Rule at the time the Rule was issued was the office of the Secretary.  *See id.* § 3348(a)(2)(A)(ii), (b)(2).  In other words, the statutory function or duty of issuing the Rule was "required by statute to be performed by the [Secretary] (and only [the Secretary])."  *Id.* § 3348(a)(2)(A)(ii).

*(5) Shall Have No Force or Effect and May Not Be Ratified.*  Thus, under section 3348 of the FVRA, because Mr. McAleenan was not properly serving as Acting Secretary under FVRA section 3347 and the DHS organic statute, his issuance of the Rule was an unlawful exercise of the Secretary's statutory function or duty, and therefore the Rule "shall have no force or effect" and "may not be ratified."  5 U.S.C. § 3348(d)(1), (2).

> **2.    Even if the FVRA's Prohibition on Ratification Does Not Apply, There Has Been No Effective Ratification of the Public Charge Rule**

Even if this Court does not find that the FVRA's absolute prohibition on ratification in section 3348 applies in this case, there has been no effective ratification of the Public Charge Rule despite Mr. Wolf's three attempts to do so, because Mr. Wolf has never had the authority to ratify.

> *(a)    The First Two Ratifications Fail Because Mr. Gaynor Was Not Serving as Acting Secretary and Lacked Authority to Amend the Order of Succession*

As every court to confront this issue has held, Mr. Wolf never became Acting Secretary of DHS because Mr. McAleenan (who himself never became Acting Secretary) lacked the authority to amend the order of succession to place Mr. Wolf, the Under Secretary for Strategy, Policy, and Plans, next in line as Acting Secretary.  *E.g.*, *Pangea*, 2021 WL 75756, at *4-5 (collecting cases).

Mr. Wolf, who maintained that he was properly serving as Acting Secretary of DHS, tried another approach.  *See* 85 Fed. Reg. 65,653; 85 Fed. Reg. 75,223; Espíritu Decl., Ex. 24.  He had the Senate-confirmed FEMA Administrator, Mr. Gaynor, twice purport to alter the DHS order of succession and place Mr. Wolf as next in line.  Espíritu Decl., Exs.18, 20.  Following each "amendment" to the order of succession, Mr. Wolf issued a memorandum purporting to ratify the

1   Public Charge Rule and other actions that were at issue due to DHS's succession quagmire.  85

2   Fed. Reg. 65,653; 85 Fed. Reg. 75,223.  These attempts have been roundly rejected by the courts

3   for three main reasons.

4          *First*, Defendants stated on the record before the Court in *Pangea* that Mr. Gaynor was

5   "*never*" Acting Secretary for either of these two attempts at amendment and ratification.  2021 WL

6   75756, at *5.  Defendants' statement of fact is a judicial admission, before another court, that Mr.

7   Gaynor had never been Acting Security during these two amendments and ratifications.  *E.g.*,

8   *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991).  These statements of fact are

9   "admissible evidence in a later proceeding," *Nextdoor.Com, Inc. v. Abhyanker*, 2013 WL

10  3802526, at *8 (N.D. Cal. July 19, 2013), and this Court may consider them when evaluating

11  Defendants' judicial admissions in this case, *e.g.*, *Gradetech, Inc. v. Am. Emps. Grp.*, 2006 WL

12  1806156, at *3-5 (N.D. Cal. June 29, 2006).  If Mr. Gaynor was not the Acting Secretary, then he

13  certainly could not alter the Secretary's order of succession under 6 U.S.C. § 113(g)(2).

14         *Second*, the court in *Batalla Vidal* held that Mr. Gaynor's attempt to "take administrative

15  action in the alternative" by declaring that he would exercise "'any authority' he might have" to

16  change the order of succession was ineffectual, as the agency could not purport to allow "two

17  different people—Mr. Wolf and Administrator Gaynor—to simultaneously exercise the

18  Secretary's power."  2020 WL 6695076, at *9.  Noting that "DHS ha[d] not submitted any notice

19  to Congress that Administrator Gaynor is currently serving as Acting Secretary of Homeland

20  Security, which is required under 5 U.S.C. § 3349(a)," the court found that "[t]here is no

21  indication that Administrator Gaynor has ever been empowered by the agency to exercise the

22  powers of the Acting Secretary, and there is every indication to the contrary."  2020 WL 6695076,

23  at *9; *see also* Espíritu Decl., Ex. 24 (FVRA notices providing that Mr. Wolf had been serving as

24  Acting Secretary since November 2019 and that Mr. Gaynor only took that position in January

25  2021).  Thus, the court held that "[e]ven if Administrator Gaynor should be Acting Secretary,

26  DHS cannot recognize his authority only for the sham purpose of abdicating his authority to

27  DHS's preferred choice, and only in the alternative."  2020 WL 6695076, at *9.

28         *Third*, even if Mr. Gaynor were serving as Acting Secretary (somehow both hypothetically

-20-

and simultaneously with Mr. Wolf), the DHS organic statute provides that "*the Secretary* may designate" the DHS order of succession for Acting Secretary.  6 U.S.C. § 113(g)(2) (emphasis added).  That does not provide any express authority for an *Acting* Secretary to amend the order of succession.  The FVRA's exclusivity exemption for when a statute "expressly authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity" likewise does not state that an *acting* head of an Executive department (i.e., a person performing the functions and duties of the head of the Executive Department) may ever be empowered to designate other acting officials.  5 U.S.C. § 3347(a)(1).  On the contrary, the FVRA distinguishes between a "person who serves in an office" for which the Senate's advice and consent is needed, on the one hand, from a person who "performs the functions and duties of the vacant office temporarily in an acting capacity," on the other.  *Id.* § 3345(a)(2).  The FVRA generally requires that a "*President* (and only the President)" may designate someone else besides the "first assistant" to serve as an Acting officer.  *Id.* (emphasis added).  Thus, section 3347 already provides a large exception to the FVRA's general rule, and reading it and statutes like the DHS organic statute to also include an *Acting* Secretary as having authority to select acting officers notwithstanding the FVRA "would undermine the structure and purpose of the FVRA and … such a reading should therefore be avoided."  *Nw. Immigrant Rights Project*, 2020 WL 5995206, at *19.

In *Northwest Immigrant Rights Project*, the court rejected the government's argument that Acting Secretaries have all of the powers of the office in which they temporarily sit, with the court noting that so holding would be contrary to the plain language of the FVRA and Congress's intent, and also would raise constitutional issues related to inferior officers' ability to appoint other inferior officers.  *Id.* at *18-23.  At its most basic, "[b]ecause the FVRA demands an 'express' statutory authorization," in section 3347, "the Court read[] 'Secretary' in § 113(g)(2) to mean the Secretary, and not an Acting Secretary."  *Id.* at *19.  Therefore, "an Acting Secretary may not amend the Department's order of succession under § 113(g)(2)."  *Id.* at *24.

Thus, neither of Mr. Wolf's two first attempts at ratification could be successful.  He was

not properly Acting Secretary following Mr. McAleenan, and Mr. Gaynor never had authority to amend the DHS order of succession to make Mr. Wolf the Acting Secretary and thereby give Mr. Wolf the authority necessary to ratify.

(b)    *The Third Ratification Also Fails Because Mr. Gaynor Could Not Circumvent the Appointments Clause and the FVRA by Delegating the Acting Secretary's Authority to Mr. Wolf*

Mr. Wolf's third attempt at ratification took a different tack: Mr. Wolf, who lacked any authority to be Acting Secretary as described above, purported to change the DHS order of succession to place Mr. Gaynor as Acting Secretary, and then Mr. Gaynor, as Acting Secretary, purported to delegate the power of the Secretary to ratify regulations to Mr. Wolf *personally*. Espíritu Decl., Exs. 22, 25.  This attempt at an end run around the FVRA, the DHS organic statute, and the Constitution's Appointments Clause also should be rejected.

Mr. Wolf was flatly barred from serving as DHS Secretary after his second nomination to that position was withdrawn.  Congress has forbidden appropriated funds to be used "for the payment of services to any individual carrying out the responsibilities of any position requiring Senate advice and consent in an acting or temporary capacity after the second submission of a nomination for that individual to that position has been withdrawn or returned to the President." Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, ¶ 749, 123 Stat. 524 (2009).  Congress also forbids federal government officers or employees from providing "voluntary services."  31 U.S.C. § 1342.  Thus, Mr. Wolf could not be paid nor volunteer to provide the "responsibilities" of the DHS Secretary position following the withdrawal of his second nomination, even if he was not purporting to serve as Acting Secretary.  Mr. Wolf was forbidden to "carry[] out the *responsibilities* of any position … in an acting *or temporary capacity* after the second submission of a nomination for [him] to that position ha[d] been withdrawn."  Pub. L. No. 111-8, ¶ 749 (emphases added).  Mr. Gaynor's delegation to Mr. Wolf of the primary responsibilities of the DHS Secretary under 6 U.S.C. § 112, including the ability to ratify regulations, was temporary. The delegation order stated that it "will remain in effect so long as Mr. Wolf is the Under Secretary for Strategy, Policy, and Plans, or until the earlier" of either a Senate-confirmed DHS Secretary or revocation of the delegation.  Espíritu Decl., Ex. 25.  The delegation was therefore in

1  contravention of Congress's prohibition on Mr. Wolf carrying out those responsibilities in either

2  an acting or temporary capacity.  *Cf. Bullock*, 2020 WL 5746836, at *8-9 (rejecting attempt to

3  fulfill duties of vacant office by use of "wordplay" instead of lawful acting official).

4         Mr. Gaynor's final attempt to delegate ratification authority to Mr. Wolf also violated the

5  FVRA.  Section 3347(a) of the FVRA provides that sections 3345 and 3346 generally are the

6  "exclusive means for temporarily authorizing an acting official to perform the functions and duties

7  of any [PAS] office."  5 U.S.C. § 3347(a).  Subsection (a)(1) creates an exception where another

8  statute "expressly" authorizes another means, but it is crystal clear that "[a]ny statutory provision

9  providing general authority to the head of an Executive agency … to delegate duties statutorily

10 vested in that agency head to … officers or employees of such Executive agency, is *not* a statutory

11 provision to which subsection (a)(1) applies."  *Id.* § 3347(b) (emphasis added).  In other words, a

12 general statutory grant of power to an agency head, like the DHS Secretary, to delegate powers to

13 other officers or employees may *not* be used to "temporarily authoriz[e] an acting official to

14 perform the functions and duties of any [PAS] office."  *Id.* § 3347(a).  But that is precisely what

15 Mr. Gaynor attempted to do.  He purported to use his general power to "delegate any of the

16 Secretary's functions to any officer, employee, or organizational unit of the Department" (6 U.S.C.

17 § 112) in order to temporarily authorize Mr. Wolf personally—who was barred by law from

18 holding the office of Secretary—to perform significant duties and functions of the office of

19 Secretary, including to issue and ratify regulations.  Espíritu Decl., Ex. 25.  This is the same kind

20 of conduct that gave rise to the FVRA in the first place.  S. Rep. 105-250, at 5, 17 (rejecting

21 argument that agency "vesting and delegation" statutes may take precedence over Congress's

22 vacancy regime); *see also SW Gen., Inc.*, 796 F.3d at 69-70.  Indeed, the Supreme Court

23 recognized that Congress adopted the FVRA following the designation of an individual as acting

24 assistant attorney general "immediately after the Senate refused to confirm him for that very

25 office."  *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 936 (2017).  Thus, the Court should reject

26 Defendants' attempt to once again circumvent Congress's vacancy framework through delegations

27 of the Secretary's authority to an individual Congress refused to confirm to that office.

28

1

*(c)     All Attempts at Ratification Were Contrary to Law under the APA,
the FVRA, and the DHS Organic Statute*

2

3        While there is some authority under the APA for ratification by a validly appointed and

4    confirmed actor, *e.g.*, *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1,

5    12 (D.C. Cir. 2019), none of those cases supports ratification here for three reasons.

6        *First*, for the reasons explained above, Mr. Wolf was never lawfully authorized to issue or

7    ratify the Public Charge Rule.  Courts require that the party ratifying have the power and authority

8    to take the action that is being ratified.  *E.g.*, *Consumer Fin. Protection Bureau v. Gordon*, 819

9    F.3d 1179, 1191 (9th Cir. 2016) ("[I]t is essential that the party ratifying should be able not merely

10   to do the act ratified at the time the act was done, *but also at the time the ratification was made.*")

11   (quoting *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994)).

12       *Second*, even assuming *arguendo* that Mr. Wolf somehow was given the temporary power

13   to issue and ratify rules on an acting basis, to Plaintiffs' knowledge no Court of Appeal has held

14   that a mere *acting* official—or anyone other than a properly appointed *and confirmed* officeholder

15   —may ratify the improper actions of an invalidly-serving predecessor.  *E.g.*, *Gordon*, 819 F.3d at

16   1190-91 (holding that the "subsequent valid appointment" and ratification cured prior

17   deficiencies); *Intercollegiate Broadcasting Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 124

18   (D.C. Cir. 2015) (explaining that a violation may be "remedied by a new, proper appointment").[6]

19       *Third*, cases upholding ratification involved decision-makers acting in good faith after

20   proper appointment to office and careful deliberation.  In *Guedes*, for instance, the ratification was

21   done by a confirmed Attorney General a month after taking office.  920 F.3d at 9.  In *Gordon*, the

22   court credited a Senate-confirmed officer's ratification of his own prior actions taken during a

23   period of unlawful service; his ratification took place a month and a half after being confirmed and

24   sworn in.  819 F.3d at 1185-86, 1191-92.  And in *Intercollegiate Broadcasting System*, the

25   properly constituted Board allowed multiple instances of briefing on how to address review of the

26   prior, unlawfully constituted Board's proceeding, providing ample time for all sides to air their

27

28   ---
[6] *Guedes* expressly did not decide whether another (different) *acting* official could validly ratify
the improper action of an invalidly-serving acting officer.  920 F.3d at 16 n.3.

views and for a fully independent review of the record.  796 F.3d at 116-17.

Here, by contrast, we have what other courts have labelled a "sham."  *Batalla Vidal*, 2020 WL 6695076, at *9.  After pursuing a "troubling litigation strategy" suggesting a "lack [of] a good-faith basis in law or fact," *Pangea*, 2021 WL 75756, at *4, Mr. Wolf—who twice failed to be confirmed by the Senate to the role of Secretary—went to extraordinary lengths to keep himself in charge.  Three times Mr. Wolf tried to get Mr. Gaynor—himself purporting to exercise the powers of the Secretary on a temporary, acting basis, and two of those times only hypothetically—to temporarily give Mr. Wolf those acting powers so that Mr. Wolf could immediately ratify the Rule.  By putting someone else temporarily in charge of the Department in the waning days of the administration for the purpose of having that person temporarily transfer back to Mr. Wolf the authority to ratify what he had already unsuccessfully tried to do, the prior administration went far beyond what any court has ever countenanced.  It is telling that Mr. Gaynor himself never purported to ratify the actions at issue, including the Public Charge Rule.  As the court in *Batalla Vidal* held regarding Mr. Gaynor's purported hypothetical service as Acting Secretary, "DHS cannot recognize his authority only for the sham purpose of abdicating his authority to DHS's preferred choice," Mr. Wolf.  2020 WL 6695076, at *9.  Defendants' attempts at ratification were invalid as arbitrary and capricious and contrary to law under the Appointments Clause, DHS's organic statute, the FVRA, and the APA.  5 U.S.C. § 706(2)(A), (B), (C); *id.* § 3348.

## V.     CONCLUSION

For all of the reasons stated above, the Court should grant summary judgment to Plaintiffs on their third, fifth, and eighth claims and enter an order holding the Rule void.


DATED:  March 8, 2021

By:      */s/ Nicholas Espíritu*

NICHOLAS ESPÍRITU (SBN 237665)
espiritu@nilc.org
ALVARO M. HUERTA (SBN 274787)
huerta@nilc.org
MAYRA B. JOACHIN (SBN 306065)
joachin@nilc.org
NATIONAL IMMIGRATION LAW CENTER

3450 Wilshire Boulevard, #108-62
Los Angeles, CA 90010
Telephone: (213) 639-3900
Fax: (213) 639-3911

ANTIONETTE DOZIER (SBN: 244437)
adozier@wclp.org
ROBERT D. NEWMAN (SBN 86534)
rnewman@wclp.org
DAVID KANE (SBN: 292186)
dkane@wclp.org
WESTERN CENTER ON LAW & POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA 90010
Tel: (213) 487-7211
Fax: (213) 487-0242

MARTHA JANE PERKINS (SBN 104784)
perkins@healthlaw.org
NATIONAL HEALTH LAW PROGRAM
200 N. Greensboro Street, Ste. D-13
Carrboro, NC 27510
Tel.: (919) 968-6308
Fax: (919) 968-8855

TANYA BRODER (SBN 136141)
broder@nilc.org
NATIONAL IMMIGRATION LAW CENTER
2030 Addison Street, Suite 420
Berkeley, CA 94704
Telephone: (510) 663-8282
Fax: (213) 639-3911

JOANNA ELISE CUEVAS INGRAM** (SBN 290011)
cuevasingram@nilc.org
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 170392
Brooklyn, NY 11217
Telephone: (213) 377-5258
Fax: (213) 377-5258

MAX S. WOLSON*
wolson@nilc.org
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
Telephone: (202) 216-0261
Fax: (202) 216-0266

1

2

3

4

5

6

7

8

9

10

11

12

13

14

LAURA D. SMOLOWE (SBN 263012)
laura.smolowe@mto.com
ERIC P. TUTTLE (SBN 248440)
Eric.Tuttle@mto.com
ANNE K. CONLEY (SBN 307952)
Anne.Conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Tel:      (213) 683-9100
Fax:      (213) 687-3702

\* Admitted Pro hac vice
\*\*Admitted to Practice in New York and California

*Attorneys for Plaintiffs La Clínica de La Raza, African Communities Together, California Primary Care Association, Central American Resource Center, Farmworker Justice, Council on American-Islamic Relations-California, Korean Resource Center, Maternal and Child Health Access, and Legal Aid Society of San Mateo County*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 8, 2021, the foregoing document was electronically transmitted to the Clerk of Court using the CM/ECF System for filing and e-service on all parties.

*/s/ Nicholas Espíritu*
NICHOLAS ESPÍRITU